Dear Ms. Smith:
You have requested an opinion of the Attorney General relative to a proposed cooperative endeavor agreement between the Department of Economic Development (DED) and the St. Bernard Port, Harbor and Terminal District (Port). Under the terms of the agreement, DED agrees to pay the Port up to the sum of $457,424.00 (State Funds) to be used by the Port for allowable costs for the development and implementation of a marketing plan to attract certain segments of the apparel industry to trade, locate and/or re-locate at the Port.
The agreement defines "allowable costs" as those costs related to retaining a marketing company, with apparel industry expertise, economic development marketing, and the ability to represent the Port's interest to the apparel and its supplier industry. The marketing company will be charged with leading an initiative, the objective of which is the development of the Port as a center for Caribbean Trade in Textiles/Apparel. The marketing company will provide expertise in research, investigations, evaluations, analyses, project coordination, and marketing representation. It will solicit industry involvement in the development of the plan and seek the endorsement and support of the apparel industry's trade association.
The agreement further calls for the marketing company to deliver to the Port a written marketing study that will include an evaluation of the Port with at least one other geographical area and outline a program that will strengthen the advantages and minimize the disadvantages, and suggest any remedial action necessary to achieve the goals of the initiative. It will also develop and deliver to the Port a marketing plan, the evaluation study, promotional and collateral material, and training to transfer the initiative to the Port. The appropriation for this project is found in Schedule No. 05-8251 of Act No. 13 of the 1992 Regular Session of the Louisiana Legislature (the General Appropriations Act). The appropriation is a 50% match. The agreement stipulates that the State Funds are provided on the basis that equal or greater contributions, in the form of time and resources, will be expended by the Port and industry in the furtherance of the project.
Your first question is whether this agreement constitutes a legitimate purpose for which a cooperative endeavor may be utilized. The constitutional norm for the lawful use of public funds and property is found in La. Const. Art. VII Section 14
(1974). Paragraph (A) generally prohibits the loan, pledge, or donation of public funds.
Paragraph (C) of Section 14 authorizes the state and its political subdivisions (i.e., Port) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private corporations, or individuals. However, Paragraph (C) supplements the prohibition against donations in Art. VII, Section 14 (A). It does not create an exemption or exception from the general constitutional norm. The Louisiana Supreme Court has ruled that all cooperative endeavors authorized by Art. VII, Section 14 (C), must also meet the general standard for the non-gratuitous alienation of public funds or property established by Art. VII, Section 14 (A). See City of Port Allen v. La. Risk Management, et al, 439 So.2d 399
(La. 1983).
Despite the authorization of cooperative endeavors, Section 14 (A) is, nevertheless, violated whenever the state, or a political subdivision thereof, seeks to give up something of value in the absence of a legal obligation to do. In other words, only if the transfer of public funds is required by a valid legal obligation will it be considered a constitutionally sanctioned cooperative endeavor.
The requirement of a legal obligation to expend public funds or to use public equipment and labor is the threshold, but not the only predicate for the constitutionality of the expenditure. The expenditure must also be for a public purpose and create a public benefit proportionate to its cost. See Opinions of the Attorney General Nos. 90-651 and 90-392. A public purpose and benefit is presumed were the underlying legal obligation for the expenditure is created by the constitution, a statute, or an ordinance.
The creation, purposes, and functions of the DED are found at LSA-R.S. 36:101. It provides, in pertinent part, the following:
 "(B) The Department of Economic Development, through its offices and officers, shall be responsible for fostering the growth of industry and other commercial enterprises in Louisiana that will contribute to the overall improvement of the economy of the state. The department shall promote the advantages of Louisiana to out-of-state business and industry, facilitate the expansion of existing enterprises, and coordinate with other state agencies and units of local government plans and programs aimed at developing optimum conditions for new and expanding industrial and commercial enterprises in Louisiana.
The powers of the Port are found at LSA-R.S. 34:1703, et seq. Section 1703 provides, in pertinent part, the following:
 "A. The said board shall have the power to regulate the commerce and traffic of the said district in such manner as may in its judgment be best for the public interest; . . . it shall be empowered to own and have charge of, to administer, construct, operate and maintain wharves, warehouses, landings, docks, sheds, belt and connection railroads, shipways, canals, channels, slips, basins, locks, elevators and other structures and facilities necessary and proper for the use and development of the business of such district, including buildings and equipment for the accommodation of passengers and those used in the handling, storage, transportation and delivery of freight, express and mail; . . . it may acquire, by purchase, lease or otherwise, industrial plant sites and necessary property or appurtenances therefor; . . ."
Section 1708 (B) provides:
 "B. The board is further authorized to receive by gift, grant, donation or otherwise, any sum of money, aid or assistance from the United States, the state of Louisiana or any of the political subdivisions thereof, for the purpose of carrying out the objects and purposes of this Chapter."
As can be seen from the above, both DED and the Port are vested with broad and sweeping authority to foster and encourage the growth of industry and other commercial enterprises in Louisiana, and to promote the advantages of Louisiana to out-of-state business and industry. Both have the authority to enter into contracts and/or agreements for the purpose of facilitating the expansion of existing enterprises, and to coordinate with other state agencies and units of local government plans and programs aimed at developing optimum conditions for new and expanding industrial and commercial enterprises in this state. Clearly envisioned within this broad scope is the authority to enter into a cooperative agreement to enable the Port to finance the cost for the development and implementation of a marketing plan to attract segments of the apparel industry to trade, locate, or re-locate at the Port.
We further conclude that the cooperative endeavor, in question, serves a public purpose — i.e., the development of the Port as a center for Caribbean Trade in Textiles/Apparel. In fact, the public purpose and benefit must be presumed since the underlying legal obligation for the agreement is created, not only from the statutory powers of DED and the Port, quoted supra, but also from the General Fund appropriation in Act 13 of 1992. In this regard, La. Const. Art. VII Section (I) (1974) provides:
"No appropriation shall be made except for a public purpose."
The remaining issue is whether the performance of the legal obligation creates a benefit for the public proportionate to the cost involved. As previously discussed, the study and marketing strategy will be of tremendous benefit to the Port, the Parish of St. Bernard, the State and the apparel industry. The development of the Port as a major center of trade in the textile and apparel industry will produce jobs and generate revenues in an area of the state currently experiencing substantial and persistent unemployment, under employment, diminished social and economic opportunity, and other forms of economic distress which adversely affects the general welfare of the people of this state and the Parish of St. Bernard. Assuming the value of the time and resources furnished by the Port and industry under the terms of the cooperative endeavor are proportionate to, or greater than, the matching State Funds we conclude that the obligations assumed by DED and the Port relating to the retention of a marketing company are not so disproportionate to the public benefit to be realized so as to render them unconstitutional under the City of Port Allen case, cited supra.
Having found a valid cooperative endeavor to exist, we turn now to your second question — is the agreement subject to the provisions of LSA-R.S. 39:1482 et seq.
As you are aware, LSA-R.S. 39:1482, et seq., embodies those laws relating to the procurement of professional, personal, consulting, and social services. Section 1482 (A) provides, in pertinent part the following:
 "A. Except as otherwise provided herein, this Chapter shall apply to every expenditure of public funds by the executive branch of this state. However, this Chapter shall not apply to the procurement of professional services for engineering design contracts, construction contracts, or contracts for surveying pertaining to the maintenance and construction of roads and bridges, flood control, aviation, public transportation, or public works entered into by the Department of Transportation and Development or to grants or to contracts or like business agreements between the state and its political subdivisions or other governmental entities or between political subdivisions or other governmental entities . . . ." (Emphasis added)
As can be seen from the above language, the laws relating to the procurement of professional, personal, consulting, and social services are not applicable to the matching grant between DED and the Port.
We further find that the expenditure of these funds and any matching funds by the Port to procure the marketing firm's services are, likewise, not subject to the provisions of Section 1482. As stated above, Section 1482 et seq. only applies to expenditures of public funds by the executive branch of this state. LSA-R.S. 34:1701 creates the Port as a public corporation and political subdivision of the state of Louisiana. La. Const. Art. VI, Section 43 (1974) clearly designates port commissions as local government entities (i.e. political subdivisions of the state). See Attorney General Opinion Nos. 77-36, 81-713, 81-713-A, 82-155, 84-619, and 91-666.
While it does not fall under the laws and regulations relating to state procurement, the Port is subject to the provisions of the state's Public Bid Law (LSA-R.S. 38:2211 et seq.). Section 2212 requires all public works, including labor and materials, and all purchases of materials or supplies, exceeding respective statutory limitations, to be paid with public funds to be advertised and let by contract to the lowest responsible bidder. However, there are no provisions contained in the Public Bid law applicable to a contract for services such as the consulting services of a marketing firm. See Wallace Stevens, Inc. v. Lafourche Parish Hospital District No. 3, 323 So.2d 794 (La. 1975). Therefore, the Port is not required to advertise and receive bids for marketing services, but rather is bound by its usual duty of prudent management in the selection of such a consultant.
In summary, this office is of the opinion that (1) the cooperative endeavor agreement between DED and the Port is constitutionally and legally permissible, (2) said agreement is not subject to the provisions of LSA-R.S. 39:1482 et seq., and (3) the consulting contract to be entered into between the Port and a marketing firm is not subject to the state's Public Bid Law contained in LSA-R.S. 38:2211 et seq.
Trusting this to be of sufficient information, I remain
Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH, III:lbw-0016R