Dear Dr. Arceneaux:
You have requested our opinion regarding the attached Affiliation Agreement between Louisiana Educational Television Authority ("LETA") and Friends of Louisiana Public Broadcasting, Inc. ("Friends"), specifically, whether the agreement is consistent with Louisiana law. Please be advised that issues of federal law, including those administered by the Federal Communications Commission, are not addressed herein in accordance with our office policy.
We have reviewed the Affiliation Agreement as well as the statutory provisions which provide for LETA's establishment and authority, R.S. 17:2501, et seq.
In accordance with R.S. 17:2505(8), LETA has the authority:
 "to solicit and receive contributions, matching funds, gifts, bequests and devices [sic] from any source, including federal, state or local, public or private."
It is, therefore, our opinion that LETA is capable of entering into a cooperative endeavor with Friends, such as the Affiliation Agreement, for the purpose of enhancing LETA's fund raising efforts and ability (La. Const. Art VII, Sec. 14C). However, we find certain provisions of the Affiliation Agreement to be problematic.
Section 2(h) of the Affiliation Agreement provides that LETA shall employ a Director of Development ("DOD") "for LPB". It is our understanding that LPB is an acronym for "Louisiana Public Broadcasting", which is a trade name of LETA. Section 2(h) further states that the funds raised by the DOD will be deposited either with Friends or with the Foundation for Excellence in Louisiana Public Broadcasting (the "Foundation"). We are advised that Friends is a private, non-profit corporation, and we assume that the Foundation is a private entity as well.
Funds received by state entities, such as LETA, must be deposited in the state treasury in accordance with La. Const. (1974) Art. VII, Sec. 9 and R.S. 49:308. The pertinent provisions of Art. VII, Sec. 9, and of R.S. 49:308 which tracks the constitutional provision exactly, state:
 "All money received by the state or by any state board, commission, or agency shall be deposited immediately upon receipt in the state treasury, except that received:
 (1) as a result of grants or donations or other forms of assistance when the terms and conditions thereof or of agreements pertaining thereto require otherwise . . ."
It is the opinion of this office that funds raised by LETA's DOD must be deposited in the state treasury unless the terms and conditions of the grant or donation, or LETA's agreement with the individual benefactor, provide otherwise.
Section 2(f) provides that LETA anticipates "depositing" funds with Friends, Section 3(e) provides that Friends "will act as a depository for LETA and Section 3(f) provides that all funds received by Friends shall be invested pursuant to Friends' "Cash Management Policy". To the extent that LETA's DOD does obtain donations or grants for LETA, the terms and conditions of which require the funds so received to be withheld from the state treasury, it is the opinion of this office that said funds must be deposited in accordance with the provisions of R.S. 49:319, et seq., regarding fiscal agent banks and required security for the deposit of funds.
By implication of the constitutional and statutory provisions cited herein, LETA cannot "deposit" state funds with either Friends or the Foundation. Should a benefactor desire his grant or donation to go to Friends or the Foundation, the funds should be given directly by the benefactor to Friends or the Foundation.
Section 2(c) provides that Friends shall be permitted to occupy a portion of LETA's Telecommunications Center, and that Friends shall reimburse LETA "either directly or through in-kind services, the reasonable cost thereof." Care should be taken to insure that LETA is fully compensated for that space, in order to avoid a prohibited donation under La. Const. (1974) Art. VII, Sec. 14. This issue was previously addressed in Opinion No. 84-402, but Opinion No. 84-402 did not refer to the decision rendered in City of Port Allen v. Louisiana Risk Management,439 So.2d 399 (La. 1983). In accordance with City of Port Allen, even if governmental entities enter into cooperative endeavors for a public purpose, "they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations, or to individuals merely for a public purpose."
Section 2(g) provides that Friends shall receive the services of LETA's graphics personnel in connection with the publication of VISIONS. LETA should be fully compensated for any services provided to Friends by LETA's personnel in order to insure that LETA does not violate Article VII, Sec. 14 by donating the services of its personnel. This issue is more fully addressed in Opinion No. 92-123 issued to you earlier this year.
Section 2(e) states that Friends shall be provided with "copies of all documents provided to the LETA members in advance of each [Board of Directors] meeting (other than such documents as may be privileged)." We do not foresee any problems in connection with giving Friends copies of documents "in advance" of meetings. However, in order to insure compliance with jurisprudence which has arisen under the Public Records Law, the Affiliation Agreement should specify that Friends will not be entitled to have access to documents which they could not otherwise obtain pursuant to the Public Records Law.
We also note that Section 4(f) of the Affiliation Agreement refers to "FLPB" instead of "Friends", no doubt through oversight. You have probably already caught and corrected this inconsistency.
Trusting this adequately responds to your request, I remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: JEANNE-MARIE ZERINGUE Assistant Attorney General
RPI:JMZ:jav 181n
cc: Ms. Beth Courtney Mr. Lee Kantrow Mr. Charles Spencer