Dear Mr. Elliott:
You have requested an opinion of the Attorney General regarding an interpretation of LSA-R.S. 32:429, relating to local motor vehicle field offices. You specifically ask whether the law permits a municipality to lease office space in which to house a local motor vehicle field office and be reimbursed the rental costs from the fee authorized by Section 429.
The powers and authority of municipalities are established constitutionally and statutorily. Article VI, Sections 5 and 7 of the 1974 Constitution provide, in pertinent part:
§ 5. Home Rule Charter
 Section 5. (A) Authority to Adopt; Commission. Subject to and not inconsistent with this constitution any local governmental subdivision may draft, adopt, or amend a home rule charter in accordance with this Section . . . .
* * *
 (E) Structure and Organization; Powers; Functions. A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.
 (F) Additional Powers and Functions. Except as prohibited by its charter, a local governmental subdivision adopting a home rule charter under this Section shall have the additional powers and functions granted to local governmental subdivisions by other provisions of this constitution."
§ 7. Powers of Other Local Governmental Subdivisions
 Section 7. (A) Powers and Functions. Subject to and not inconsistent with this constitution, the governing authority of a local governmental subdivision which has no home rule charter or plan of government may exercise any power and perform any function necessary, requisite, or proper for the management of its affairs, not denied by its charter or by general law, if a majority of the electors voting in an election held for that purpose vote in favor of the proposition that the governing authority may exercise such general powers. Otherwise, the local governmental subdivision shall have the powers authorized by this constitution or by law."
LSA-R.S. 33:361 further provides, in pertinent part:
§ 361. Municipal powers
 A. Except as otherwise provided in this Part, a municipality shall be vested with all powers, rights, privileges, immunities, authorities, and duties heretofore possessed in accordance with all constitutional and statutory provisions with respect thereto. A municipality is further authorized to exercise any power and perform any function necessary, requisite, or proper for the management of its affairs not denied by law."
Among the powers not denied by the constitution or by general law is the authority for a municipality to enter into leases for a public purpose in the capacity of lessee. We turn now to the issues of the purpose of the lease and the authority for its confection.
LSA-R.S. 32:429, as amended by Act 275 of 1990, provides:
§ 429. Motor vehicle field offices; authorization of fees
 A. The governing authority of any local governmental subdivision is hereby authorized to levy, by resolution, a fee for each service or transaction carried out as an operation of a local field office of the office of motor vehicles of the Department of Public Safety and Corrections which local field office is not fully funded by the state. The fee shall not exceed two dollars per service or transaction, shall not apply to the procurement or renewal of a motor vehicle registration license, and shall be used solely to defray the cost of operations of that local field office supported by the governing authority of any local governmental subdivision including but not limited to facility rental, utilities, and maintenance.
 B. Any fee levied under the authority of Subsection A of this Section shall be considered non-state funds and shall be collected by the motor vehicle commissioner on behalf of the governing authority of any local governmental subdivision pursuant to an agreement to be executed by and between the motor vehicle commissioner and the governing authority of any local governmental subdivision. Any such fees collected by the motor vehicle commissioner shall be deposited in the state treasury in the Escrow Fund and held for the account of the governing authority of any local governmental subdivision levying such fee. The office of the motor vehicle commissioner shall distribute any such fees to the appropriate governing authorities of local governmental subdivisions." (Emphasis added.)
As can be gleaned from the above, the governing authority of any local governmental subdivision (e.g., a municipality) may, by resolution, impose the assessment of a fee, not to exceed $2.00, on certain motor vehicle transactions. The fee must be used solely for the operations of the field office, including the expenses relating to facility rental. We can find no language in Act 275 or the minutes of the legislative committee hearing at which the act was discussed and reported favorably that prohibits the reimbursement of rental costs associated with privately-owned facilities leased by municipalities.
The constitutional norm for the lawful use of public funds and property is found in the Louisiana Constitution, Art. VII, Section 14 (1974). Paragraph (A) generally prohibits the loan, pledge, or donation of public funds. Exceptions to this prohibition are found in Paragraph (B), all of which are inapplicable to the case at hand.
Paragraph (C) of Section 14 authorizes the state and its political subdivisions (e.g., municipalities) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private corporations, or individuals. However, Paragraph (C) supplements the prohibition against donations in Art. VII, Section 14 (A). It does not create an exemption or exception from the general constitutional norm. The Louisiana Supreme Court has ruled that all cooperative endeavors authorized by Art. VII, Section 14 (C), must also meet the general standard for the non-gratuitous alienation of public funds or property established by Art. VII, Section 14 (A). See City of Port Allen v. La. Risk Management, et al, 439 So.2d 399 (La. 1983).
Despite the authorization of cooperative endeavors, Section 14 (A) is, nevertheless, violated whenever a political subdivision seeks to give up something of value in the absence of a legal obligation to do so. In other words, only if the transfer of public funds is required by a valid legal obligation will it be considered a constitutionally sanctioned cooperative endeavor.
The requirement of a legal obligation to expend public funds or to use public equipment and labor is the threshold, but not the only predicate for the constitutionality of the expenditure.
The expenditure must also be for a public purpose and create a public benefit proportionate to its cost. Opinions of the Attorney General Nos. 90-651 and 90-392. A public purpose and benefit are presumed where the underlying legal obligation for the expenditure is created by the constitution, a statute, or an ordinance.
As noted above, LSA-R.S. 32:429 authorizes a fee for the operations of local field offices, not fully funded by the state. In addition, LSA-R.S. 32:408(A)(10) and (11) requires the Department of Public Safety and Corrections to locate testing centers in locations convenient to applicants, one of which must be in the parish seat. We, therefore, conclude that a municipality's lease of privately-owned facilities in which to house a local motor vehicle field office constitutes a valid legal obligation authorized by the constitution and statutes.
We further conclude that the transaction constitutes and serves a public interest — i.e., that of affording the general public convenient access to facilities in which they can transact business relating to the testing, licensing, and registration or motor vehicle operation. Further, the public benefit to be derived is proportionate to the costs associated therewith.
With regard to the lease, itself, a municipality is not legally obligated to secure same by public bid. However, sound business practices dictate that bidding, negotiation, and/or appraisals are advisable to insure that a reasonable rental rate is procured. Attorney General Opinion No. 82-303.
Finally, the fee authorized by LSA-R.S. 32:429, to be assessed by resolution of the local governmental subdivision, must be reasonable. While states and their political subdivisions are accorded wide latitude in the regulation of their local economies under their police powers, any regulation imposed by the municipality for a fee must be applied fairly and in a manner reasonably related to the municipality's objective in accordance with due process. City of Lake Charles v. Henning,414 So.2d 331 (La. 1982). Thus, the fee should not be excessive so as to constitute an illegal tax, and should be applicable to all other residents similarly situated. Attorney General Opinion Nos. 92-287, 91-260, 89-311, and 80-82.
Trusting this adequately responds to your inquiry, I am
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/bb 0168R
cc: Councilman Johnny Jackson, Jr.