Dear Mr. Wooden:
The Louisiana Assessors' Association has requested the opinion of this office regarding a supplemental life insurance program currently under consideration by the Association.
You have advised that the Association's group life plan has recently been amended, in an effort to control future costs and to administer the program within sound and prudent guidelines. This amendment has resulted in a decrease in benefits accruing to members at retirement, and at the age of 70. It is our understanding that the supplemental program, if instituted, will provide permanent life insurance benefits that will serve to replace the recently reduced benefits provided by the Association's group life program.
You have also advised that each plan member will be funding his or her own post-retirement death benefits, and that each participating assessor's office will have the following options with regard to payment for the supplemental plan:
 1. The employee pays for all of the cost of the supplemental insurance program; or,
 2. The employee pays the cost associated with the cash value build-up in the policy and the assessor's office pays for the term cost plus the administrative expenses.
In particular, the Association is interested in determining whether the proposed method of funding the supplemental program, with regard to the portion of costs to be assumed by each assessor's office, is a proper or improper use of public funds.
We assume that the supplemental plan referred to in your correspondence was contracted for through the Assessors' Insurance Fund, established by R.S. 47:1922 and 1923. The provisions of R.S. 47:1923 which are pertinent to your inquiry state:
 "With the approval of the local governing authority the assessor in each of the several parishes of the state may make contracts separately, or jointly through the insurance committee elected by the voting members of the Louisiana Assessors' Association to administer the Assessors' Insurance Fund, for group life [insurance] . . . with any insurance company legally authorized to do business in this state, for the purpose of insuring the assessors and assessors' employees . . . under a policy or policies of group insurance covering such persons. The assessor may pay out of the assessor's salary and expense fund the total insurance contract premium or charges for the assessors and the assessors' employees . . . Where the assessor and his employees are insured jointly under a group plan administered by the Assessors' Insurance Fund, a fee for the cost of administering the Assessors' Insurance Fund may be paid by the assessor out of the assessor's salary and expense fund when covered by such insurance."
Clearly, this provision authorizes the assessors to obtain life insurance for the benefit of the employees of their offices, and to do so through the Assessors' Insurance Fund, when the conditions of R.S. 47:1923 are met.
In order to fully respond to your question, however, this office must examine R.S. 47:1923 in light of La. Const. (1974) Art.VII, Sec. 14, regarding prohibited and authorized uses of public funds.
The pertinent provisions of Art. VII, Sec. 14 state:
 "(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds . . . of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
* * *
 (B) Authorized Uses. Nothing in this section shall prevent . . . (2) contributions of public funds to pension and insurance programs for the benefit of public employees; . . ." (emphasis added)
In Morial v. Orleans Parish School Board, 332 So.2d 503
(La.App. 4th Cir. 1976), writ denied, 337 So.2d 530 (1976), the provisions of R.S. 17:1201-1212, which provide a formula for determining the amount to be paid a teacher who is absent on sick leave for a period in excess of her accumulated sick leave days, were held constitutional as a "legislatively created benefit, earned by virtue of the employment itself."
The Morial case interpreted La. Const. (1921) Art. IV, Sec. 12, however, the Supreme Court, in City of Port Allen v. Louisiana Municipal Risk Agency, Inc., 439 So.2d 399 (La. 1983) held that the 1921 constitutional provision "was virtually identical to the present Art. VII, Sec. 14(A)." Furthermore, City of Port Allen upheld the Morial decision and distinguished it from those cases which hold that the Constitution is violated whenever the state or a political subdivision gives up something of value when it is under no obligation to do so. The Court stated, in footnote 6 of the City of Port Allen decision, that even though the teacher received pay for a period in excess of her sick leave, "this was still `earned' compensation, not a gratuity, pursuant to the legislative scheme."
In accordance with the Morial and City of Port Allen decisions, it is the opinion of this office that the provisions of R.S.47:1922 and 1923 do not violate La. Const. (1974) Art. VII, Sec.14, and that each assessor can legally pay, from his or her salary and expense fund, the term cost of the insurance provided to the assessor and his or her employees, as well as the administrative cost associated with administration of the plan by the Assessors' Insurance Fund.
Such payments are clearly "contributions of public funds to . . . insurance programs for the benefit of public employees" as well as "earned compensation" pursuant to a legislative scheme.
Trusting this adequately responds to your request, I remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: JEANNE-MARIE ZERINGUE Assistant Attorney General
RPI:JMZ:jav 0346n