Dear Mr. Dahmer:
You have requested an opinion of the Attorney General regarding the legal authority under which you may reopen and computerize a mapping department within your office with the capability of producing ownership maps. You would like to establish this project with the Tangipahoa Parish Assessor (Assessor), thus enabling the assessor's office to provide information to the public more efficiently and with greater fairness concerning assessments. You further state that you would like your system, which is commonly known as a Geographic Information System (GIS), to be the central computer which other governmental entities will be able to use in establishing computerized mapping to better serve the public they represent.
In this regard, you ask the following questions:
 1. Is there any law which would prohibit the Clerk of Court (Clerk) from expending funds on a computer system to establish maps indicating land parcel ownership?
 2. Is there any law which would prohibit the Clerk and Assessor from jointly participating in a computerized mapping project?
 3. Is there any law which would prohibit the Clerk from establishing a GIS through which other governmental entities could share information which would be beneficial to the general public?
In answer to your first question, it is our understanding that the GIS, possessing the capability of producing ownership maps, that you desire to develop and integrate into your office constitutes an integral component of your official duties as Clerk. While the primary responsibility for the purchase of computer equipment for Clerks lies with the parish governing authority under the provisions of R.S. 33:4713, that section must be read
 " § 784. Police jury to defray capital outlay expense
 A. Upon the request of the clerk, the police jury shall provide him with all necessary office furniture, equipment, and record books.
 B. Out of any surplus in his salary fund, each of the clerks of the district courts may purchase office furniture, equipment, record books, and supplies as may be needed for the proper conduct of his office and may expend funds for renovation of his office, all in accordance with the public bid law of the state." (Emphasis added.)
Thus, it is the opinion of this office, that the Clerk may purchase equipment, including the system contemplated in your request, out of any surplus in the salary fund.
In answer to your second question, it is our understanding that the benefits and capabilities to be derived from the GIS are equally beneficial to the Assessor in carrying out the official duties of his office. This fact has been recognized in prior opinions issued by this office, to wit: Attorney General Opinion Nos. 89-523, 88-443 and 77-262. See also R.S. 47:1959 which requires the Assessor to complete ownership maps for each parish.
With regard to the source of funding for the purchase of computer equipment for the Assessor, R.S. 33:4713 provides, in pertinent part, the following:
 "The cost of such furniture and equipment, supplies and maps, as may be needed by the tax collector and assessors of each parish shall be borne proportionately by all tax recipient bodies in the parish in the proportion of the amount received from such tax monies by each recipient body in the parish
 The police jury or governing authorities shall make these purchases and then bill the other tax recipients for their proportionate share."
The above provision, as interpreted by State v. IberiaParish School Board, 112 So.2d 710 (La. 1959), designates the parish governing body as the only body authorized to purchase equipment for the assessor of the parish. Thus, unlike Clerks who have specific statutory authority to purchase their own equipment from surplus salary funds, the assessor must present his need for such equipment to the parish governing authority. Typically, once the need is presented, the parish governing body makes the purchases of the mandated items and then bills the other tax recipients for their proportionate share.
This office has previously recognized a limited exception to this rule. Opinion No. 88-342 opined that, when an assessor presents his need for mandated items, he may also request permission of the parish governing body to acquire those items at his own expense. The opinion found that it would be permissible for the parish governing body to allow such a purchase, or to jointly purchase such items with the Assessor.
Parenthetically, it should be noted that if an assessment district created pursuant to R.S. 47:1925.1 et seq., is exercising its taxing power, then the district constitutes a "tax recipient body" within the meaning of R.S. 33:4713. See Attorney General Opinion No. 88-491. Thus, the assessment district would bear its proportional share of the expense of the GIS.
With regard to the Clerk's and Assessor's joint participation in the computerized mapping project, itself, your question must be addressed in light of the Louisiana Supreme Court decision rendered in City of Port Allen v. LouisianaMunicipal Risk Management Agency, Inc., 439 So.2d 399 (La. 1983). That case interpreted this state's constitutional prohibition against the loan, pledge or donation of assets belonging to a governmental entity and the exceptions thereto, the relevant provisions of which are set out in Section 14(A) — (C).
In City of Port Allen, cited supra, the Court stated that Article VII, Section 14(A) ". . . is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so." The Court went on to state that the constitutional authorization for cooperative endeavors, contained in Section 14(C), does not provide for an exception to the prohibition contained in Section 14(A):
 "There is no indication that [Sec. 14(C)] is meant to be an exception to the rule of Sec. 14(A) . . . . thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations or to individuals merely for a `public purpose'."
As previously noted, the duties of both the Clerk and Assessor legally justify the procurement of the GIS. Article VI, Section20 of the Louisiana Constitution of 1974 provides:
 § 20. Intragovernmental cooperation
 Section 20. Except as otherwise provided by law, a political subdivision may exercise and perform any authorized power and function, including financing, jointly or in cooperation with one or more political subdivisions, either within or without the state, or with the United States or its agencies."
Further, R.S. 33:1324 provides, in pertinent part, the following:
 "Any parish, municipality or political subdivision of the state, or any combination thereof, may make agreements between or among themselves to engage jointly in the . . . acquisition or improvement of any public project or improvement, the promotion and maintenance of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may be necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, personnel or property or any combination thereof necessary to accomplish the purposes of the agreement, and such agreements may include but are not limited to activities concerning:
* * *
 (7) Purchase of materials, supplies, and equipment for use in the maintenance of governmental services authorized under this part or under any other general or special law."
In addition, R.S. 33:1324.1 provides:
 "In order to effect economy of operation, any two or more political corporations or subdivisions may contract with each other to combine the use of administrative and operative personnel and equipment upon such basis of compensation therefor as may be mutually agreed to by all such political corporations and subdivisions."
As can be seen from the above, ample constitutional and statutory authorities exist to enable joint participation by the Clerk and the Assessor in the GIS project. This joint participation should be reduced to writing and conform to the provisions of "The Local Services Law", including R.S. 33:1325.
With regard to your third question, we believe our discussion in answer to your second question to be dispositive and equally applicable to other governmental bodies wishing to participate in the use of the GIS.
Trusting this adequately answers your questions, I am
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: _________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob3/bb
0407R
Date Received: 08-15-94
Date Released:
ROBERT E. HARROUN, III ASST. ATTORNEY GENERAL