Dear Ms. Dougherty:
You advise that the Louisiana State University System is working to implement a Section 125, Internal Revenue Code Cafeteria Plan. You state the cafeteria plan would include unreimbursed medical expenses as part of the plan. You also advise that federal law now requires that the plan cover up-front medical reimbursement program options. Constitutional concerns under Article VII, §14(A) of the Louisiana Constitution of 1974 are invoked, as that provision prohibits the state employer from advancing money on behalf of an employee prior to that money being earned by the employee.
LSA-Const. Art. VII, § 14(A) provides, in part:
 " § 14(A) Prohibited uses. Except as otherwise provided by this Constitution, the funds, credit, property, or things of value of the State or any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
In order to avoid constitutional concerns with respect to the expenditure of state funds, under Article VII, § 14(A), the University proposes one of three scenarios, each of which we examine herein.
 (1) As a condition to entering the plan, each University employee would pay a small fee per month into a trust fund established at the LSU Foundation (or another private nonprofit entity) to be utilized in the event that the need arises to advance dollars for medical expense reimbursement prior to the dollars being earned by the employee. Those dollars would not be paid to the University and would not become state dollars, but would be paid directly by the employee to a private party.
At the outset, we assume that in this instance the employee will reap the benefit of the payment of the fee and/or any other monies set aside by or paid by each employee under the Code. That assumption having been made, no state constitutional concerns are raised by this scenario, as the state employer merely serves as a conduit for the employee's money to be placed in the trust fund. However, because federal regulations require full reimbursement at any time in the plan year for any legitimate claim, the state is still liable under federal law for the advancement of the balance due, should the fund be depleted. Therefore, if the fund should be depleted the State would be prohibited from advancing funds, and the plan may be subject to disqualification because of its inability to comply with the federal regulation. Of course, if the short fall is made up by a non-public third party, the constitutional question does not arise.
 (2) Alternatively, the University proposes to hire a third party administrator to implement the plan. This administrator would assume liability for the spending accounts and/or the creation of a special fund, created by employee payments, that could be used in meeting the requirements of federal law. Part of the administrator's duties would be to cover the above described risk.
Your second option is constitutionally permissible. Again, there is no expenditure of state funds, as the employee would pay for the administrative costs associated with the implementation of the plan. The university acts only as a conduit in forwarding these monies to the third party administrator. More importantly, the risk of covering any outstanding balance would be assumed by the third party administrator, which would avoid the potential impermissible expenditure of state funds, a concern raised by the first proposal.
 (3) The University has considered purchasing an insurance policy pursuant to which the insurance company would be obligated to pay the advance dollars for medical expense reimbursements in the event that such expenses are incurred prior to the dollars being earned by the employee. The University would pay a premium to purchase that insurance. Payments would be made by the insurance company directly to the employee.
Your third proposal does invoke application of Article VII, § 14(A). Article VII, § 14 is violated whenever the state or its political subdivisions seek to give up something of value to the absence of a legal obligation to do so. Further, the expenditure must also be for a public purpose and create a public benefit proportionate to its cost. A public purpose and public benefit are presumed where the underlying legal obligation for the expenditure is created by the constitution, a statute, or an ordinance. See City of Port Allen vs Louisiana RiskManagement, 439 So.2d 399 (La. 1983). We find no underlying legal obligation on the part of the University to use state funds to purchase an insurance policy, beyond the limits established in LSA-R.S. 1(A)(1)(C), providing that "the contribution of the state in all cases shall not exceed fifty percent of the total premium paid" for the purchase of insurance contracts.
Please note that whatever plan is adopted, we suggest that prior to its implementation, that you consult with the appropriate representative of the Internal Revenue Service to ensure compliance with all federal regulations governing cafeteria plans.
We trust the foregoing is helpful to you. Should you have other questions in which we may be of assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _______________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
Ms. Nancy C. Dougherty Taylor, Porter, Brooks Phillips, L.L.P. Post Office Box 2471 Baton Rouge, LA 70821
Date Received:
Date Released: December 5, 1994
KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL