Dear President Copping:
You have requested an opinion of the Attorney General, in your capacity as President of the Louisiana State University System, relative to the legality of a proposed Cooperative Endeavor Agreement (Agreement) between the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (Board) and the Tiger Athletic Foundation (Foundation), a Louisiana nonprofit corporation. Attached to your request is a copy of the proposed Agreement.
You specifically ask whether the Agreement, once it is executed and approved, constitutes a legal, valid and binding contract. You also ask whether any approvals of the Agreement are necessary, other than the LSU Board of Supervisors, the Louisiana Board of Regents and the Division of Administration.
Under the terms of the proposed Agreement, the Foundation is obligated to erect and install, at its sole expense, scoreboards in the Pete Maravich Assembly Center, Tiger Stadium, Bernie Moore Track Stadium and the Dub Robinson Tennis Stadium. In addition, the Foundation proposes to upgrade the existing scoreboards in Alex Box Stadium. The scoreboards will be installed in specified locations and in accordance with detailed specifications agreed upon by both parties.
The Foundation will provide adequate insurance coverage for builder's risk and general liability and property damage during the construction phase. Upon completion, the Foundation will procure general comprehensive liability insurance coverage against claims for personal injury, death or property damage for the remaining term of the Agreement. The Foundation will also procure a ten-year maintenance contract on the scoreboards.
The Agreement is for an initial term of five years with three one-year options to renew. The Foundation will retain ownership rights to the scoreboards, except for the one in Alex Box Stadium, with respect to which the Foundation will have rights of use. The Board will, however, retain full rights to use and operate the scoreboards during, and in conjunction with, any regularly scheduled or special event held in any of the facilities in which the scoreboards are installed or upgraded. Ownership will revert to the Board, at no cost, upon termination of the Agreement. In addition, the remainder of the maintenance contract will revert to the Board. The useful life of the scoreboards is guaranteed to be a minimum of twenty years.
The Agreement obligates the Board to grant the Foundation rights of access to the facilities in which the installation, and the work incidental thereto, will occur. The Foundation will also, during the term of the Agreement, have the right to contract with sponsors for scoreboard recognition. The Board will be allotted two sponsor panels on the Tiger Stadium and Pete Maravich Assembly Center scoreboards and one panel on the remaining scoreboards. The Foundation will be entitled to grant rights to the remaining panels to other sponsors.
Further, the Board will grant the Foundation additional sponsorship rights and amenities required for the Foundation to provide complete corporate sponsorships to interested parties. The Board will retain the sole discretion to grant or withhold approval for any and all such sponsorship contracts. The sponsorship recognition and amenities to be made available to the Foundation include marketwide media and promotions, signage, onsite media and promotion, ticket, hospitality and related items. The Foundation will pay the Board $25,000 per year as reimbursement for the Board's out-of-pocket expenses relating to the provision of these sponsorship rights. Having reviewed some of the essential provisions contained in the Agreement, we turn now to the authority of the Board to enter into same.
The constitutional norm for the lawful use of public funds and property is found in Article VII, Section 14 of the Louisiana Constitution of 1974. Paragraph (A) generally prohibits the loan, pledge, or donation of public funds and property. Exceptions to this prohibition are found in Paragraph (B), all of which are inapplicable to the issues at hand.
Paragraph (C) of Section 14 authorizes the state (e.g., the Board) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private corporations, or individuals. However, Paragraph (C) supplements the prohibition against donations in Section 14(A). It does not create an exemption or exception from the general constitutional norm. The Louisiana Supreme Court has ruled that all cooperative endeavors authorized by Section 14(C), must also meet the general standard for the non-gratuitous alienation of public funds or property established by Section 14(A). See City of Port Allen v.La. Risk Management, et al, 439 So.2d 399 (La. 1983).
Despite the authorization of cooperative endeavors, Section 14(A) is, nevertheless, violated whenever the State seeks to give up something of value in the absence of a legal obligation to do so. In other works, only if the use of public funds or property is authorized by a valid legal obligation, will it be considered a constitutionally sanctioned cooperative endeavor.
The requirement of a legal obligation to expend public funds or use public property is the threshold, but not the only predicate for the constitutionality of the expenditure or use. The expenditure or use must also be for a public purpose and create a public benefit proportionate to its cost. Attorney General Opinion Nos. 92-722 and 90-651. A public purpose and benefit are presumed where the underlying legal obligation for the expenditure or use is created by the constitution, a statute or an ordinance. We turn now to the general powers and duties of the Board.
Article VIII, Section 7 of the Louisiana Constitution of 1974 provides, in pertinent part, for the creation and powers of the Board:
 Section 7. (A) Creation; Powers.
 The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College and the Board of Supervisors of Southern University and Agricultural and Mechanical College are created as bodies corporate. Subject to powers vested in this Article in the Board of Regents, each shall supervise and manage the institutions, statewide agricultural programs, and other programs administered through its system.
The powers and duties of each institutional management board, including the Board, are set forth in R.S. 17:3351 which provides, in pertinent part, as follows:
 § 3351. General powers, duties and functions of college and university boards
 A. Subject only to the powers of the Board of Regents specifically enumerated in Article VIII, Section 5 of the Constitution of Louisiana, and as otherwise provided by law, each management board as a body corporate shall have authority to exercise power necessary to supervise and manage the institutions of higher education under its control, including but not limited to the following:
 * * *
 (18) Perform such other functions as are necessary or incidental to the supervision and management of the university system it supervises and manages.
R.S. 17:3361 further provides with respect to the Board's authority to execute leases, in pertinent part, as follows:
 § 3361. Authority of boards to execute leases
 A. Each board may grant leases of any portion or portions of the grounds or campus of any college of university or of other immovable property under its supervision and management, for a term not to exceed ninety-nine years for each lease, to any of the following:
 * * *
 (5) A private entity, provided such private entity shall be obligated under the terms of the lease agreement to construct improvements on the leased premises which will further the educational, scientific, research or public service functions of the board.
In addition, R.S. 17:3390 provides, in pertinent part, with respect to alumni associations, foundations and other private nonprofit organizations as follows:
 § 3390. Private nonprofit corporations which support public higher education institutions; findings; status; private funds
 A. The legislature finds that private support enhances the programs, facilities, and research and educational opportunities offered by public institutions of higher education in Louisiana. Therefore, each higher education management board and institution is hereby encouraged to promote the activities of alumni associations, foundations, and other private, nonprofit organizations that raise private funds for the support of public institutions of higher education. Further, it is recognized that private, nonprofit organizations under the direction and control of private individuals who support institutions of higher education are effective in obtaining private support for those institutions.
As can be seen from the above, the Board is vested with broad and sweeping authority to exercise all power to direct, control, supervise and manage the LSU System. This includes the power and authority to enter into contracts and agreements, leases with private entities, the promotion of the activities of alumni associations, foundations and other nonprofit organizations and, in general, to perform such other functions as are necessary or incidental to the supervision and management of the university system. Clearly envisioned within the scope of the Board's constitutional and statutory powers is the authority to contract with the Foundation to erect, install, and/or upgrade scoreboards for the facilities discussed hereinabove. Accordingly, it is our opinion that a valid legal obligation and/or authority exists, pursuant to which the Cooperative Endeavor Agreement can be confected. We turn now to the question of whether the purpose(s) of the Agreement constitute(s) a public purpose.
The additions of, or improvements to, scoreboards for the athletic facilities will be state of the art. The scoreboards will feature instant replays and provide more interaction with fans. This will enhance the ability to sell tickets, increase fund raising capabilities of the Board and the Foundation and constitute permanent improvements to university property. We therefore conclude that the presumption that a public purpose is being served is amply supported.
Finally, with regard to the last criterion, that the public benefit created be reasonably commensurate to its cost, we note that the only expenditure of public funds on behalf of the Board is related to providing additional sponsorship rights to the Foundation. Assuming the Board would incur out-of-pocket expenses in this regard, the Foundation has agreed to reimburse these expenses to the Board in the amount of $25,000 per year.
The Foundation will spend approximately $5,000,000 on this project. As previously discussed, full ownership of the scoreboards will revert to the Board, at no cost, upon expiration of the Agreement. During the course of the Agreement, the Board will be allotted sponsor panels on the front of the scoreboards. We have been advised that this will generate approximately $375,000 per year in revenues, compared to $250,000 in previous years. It is further estimated that the Foundation will receive approximately $1,000,000 per year in sponsorship revenues which will be used to offset the cost of the project.
Based on these projections, it is the opinion of this office that the obligations assumed by the Board under the Agreement are not so disproportionate to the benefits to be realized so as to render the Agreement unconstitutional.
Accordingly, and in answer to your first question, it is the opinion of this office that the proposed Agreement constitutes a legal, valid, and binding Cooperative Endeavor Agreement under Article VII, Section 14(C).
We are further of the opinion that the approvals of the Agreement by the LSU Board of Supervisors, the Louisiana Board of Regents and the Division of Administration are adequate. We can find no legal authority for the necessity of any additional approvals.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH, III/sfj