Dear Mr. Dees:
On behalf of the Board of Directors of the Lake Charles Harbor 
Terminal District (the "Port"), you have requested an opinion of this office regarding a request made by the Lake Charles Sugar Cane Cooperative, Inc. ("LCSCC") to the Port for a grant in the amount of $150,000. Apparently, the LCSCC has requested that the Port provide partial funding for a feasibility study regarding the economic impact, in the Lake Charles area, of a new sugar cane and sweet sorghum processing factory to be located in Jeff Davis Parish, and which will process cane and sorghum grown in both Jeff Davis and Calcasieu Parishes.
In accordance with the legal analysis set forth below, we agree with the conclusion reached in your memorandum to the Port's Board, dated January 8, 2002 and submitted to us along with your opinion request. Respectfully, we are compelled to advise the Port that in the opinion of this office the Port is constitutionally prohibited from providing funding for the feasibility study in question.
We note, as you did, that the Port's inquiry must be examined in light of La. Const. Art. VII, Sec. 14(A), which prohibits the state and its political subdivisions from loaning, pledging or donating public funds, assets or property to persons, associations or corporations, public or private. Although La. Const. Art. VII, Sec. 14(B) creates certain exceptions to the general prohibition of Art. VII, Sec. 14(A), the Port's contemplated assistance to the LCSCC is not among those exceptions.
Pursuant to La. Const. Art. VII, Sec. 14(C), the state and its political subdivisions may engage in cooperative endeavors for public purposes. However, these constitutional provisions must be scrutinized in light of the decision of the Louisiana Supreme Court in City of PortAllen v. Louisiana Municipal Risk Agency, 439 So.2d 399 (La. 1983). Therein, the Supreme Court ruled that La. Const. Art. VII, Sec. 14(A) " is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so." The Court went on to state that the constitutional authorization for cooperative endeavors, contained in Art. VII, Sec. 14(C), does not provide an exception to the prohibition contained in Sec. 14(A):
 "There is no indication that [Sec. 14(C)] is meant to be an exception to the rule of Sec. 14(A) Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations merely for a `public purpose'."
We have examined the Port's legal authority, particularly as set forth in La.R.S. 34:201, et seq. In particular, we note the Port's authority, at La.R.S. 34:203(C), to " induce and encourage the location of enterprises which would have economic impact upon the area served by it ". In our opinion, however, when read in pari materia with La. Const. Art VII, Sec. 14, these statutes do not authorize the Port to provide the financial assistance requested. As your memorandum recognized, the Port`s statutory directives provide it with certain limited economic development authority. However, this office is unaware of any legal obligation imposed upon, or authorization granted to the Port, to conduct or provide funding for feasibility studies for the benefit of private entities, even though the endeavors of the private entities in question may ultimately facilitate economic development in the areas served by and surrounding the Port.
We trust the foregoing to be of assistance. If we can be of assistance in other areas of the law, please do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: _____________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI/JMZB/dam
Date Released: April 25, 2002