439 So.2d 399 (1983)
CITY OF PORT ALLEN, LOUISIANA
v.
LOUISIANA MUNICIPAL RISK MANAGEMENT AGENCY, INC. et al.
No. 82-CA-2964.
Supreme Court of Louisiana.
October 17, 1983.
*400 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Roy A. Mongrue, Jr., David G. Sanders, Asst. Attys. Gen., for defendant-appellant.
R. Gordon Kean, Jr., Charles S. McCowan, Jr., Sanders, Downing, Kean & Cazedessus, Baton Rouge, for plaintiffs-appellees.
DIXON, Chief Justice.
The City of Port Allen filed this action for a declaratory judgment against the Louisiana Municipal Risk Management Agency, an association of local governmental subdivisions formed pursuant to R.S. 33:1341, et seq.[1] Specifically, the city asked that R.S. 33:1349(C), as enacted by Act 808 of 1981, be interpreted so as not to conflict with R.S. 33:1347, a provision which was in the original 1979 act. Alternatively, the city asked that § 1349(C) be declared unconstitutional. If the conflict, however, could not be resolved and if the statute was constitutional, then the city asked that the effect of § 1349(C) be held not retroactive to claims occurring prior to the effective date of the act.
The trial court declared § 1349(C) to be unconstitutional. We affirm, holding R.S. 33:1349(C) violative of La. Const. Art. 7, § 14(A) insofar as it purports to impose solidary liability on local political subdivisions.
The 1979 act authorized municipalities and other government bodies to form an association for the purpose of reducing the danger of loss on account of public liability and workmen's compensation.[2] Two or more local government subdivisions could form an intergovernmental risk management agency and could pool funds from member contributions in order to manage risks, to establish group self insurance funds, and to purchase joint insurance. As a result, many municipalities have taken advantage of the benefits afforded by the act in the form of lower premium costs.
Section 1347 expressly limited the use of each member's funds. A member was liable only for the payment of his contribution, and he was not liable on account of membership (1) to the agency, (2) to any other member, or (3) to any claimant against the agency, against the particular member, or against another member, except with respect to the particular member's workmen's compensation rights and obligations with its own employees.[3] The section specifically stated that no such agreement should have the effect of providing for a donation of public funds by one local government to another.
*401 Section 1349 originally concerned only the requirement that an agency maintain specific excess insurance for the pertinent risks. R.S. 33:1349(A) and (B) prior to 1981. In 1981, the section was rewritten and subsection (C) was added. It provided:
"C. Nothing herein shall be construed to in any way reduce or limit a participant's rights or obligations with respect to his or its employees under the other provisions of this Chapter and all fund members shall be liable jointly and in solido for claims not paid pursuant to this Chapter." (Emphasis added).
The conflict between § 1347 (which limits the liability of each member to contributions and to claims against the particular member) and § 1349(C) (which makes all members liable in solido for claims not paid by the agency) prompted the City of Port Allen to seek the present declaratory judgment.
The Louisiana Constitution of 1974 provides, as a general rule, that neither the state nor local political subdivisions may loan, pledge, or donate its assets to another. This rule is subject to certain exceptions which are specifically authorized. The relevant provisions are set out in Art. VII, § 14(A)-(C) which provides:
"(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
(B) Authorized Uses. Nothing in this Section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy; (2) contributions of public funds to pension and insurance programs for the benefit of public employees; or (3) the pledge of public funds, credit, property, or things of value for public purposes with respect to the issuance of bonds or other evidences of indebtedness to meet public obligations as provided by law.
(C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
The City of Port Allen argues that the imposition of solidary liability by R.S. 33:1349(C) would result in a loan, pledge, or donation within the meaning of Const. Art. VII, § 14(A). The state, on the other hand, contends that 33:1349(C) does not force a participant in the agency to loan, pledge, or donate anything of value to another. Moreover, and alternatively, the state alleges that such a scheme is expressly allowed as a cooperative endeavor under Art. VII, § 14(C).
There is little jurisprudence interpreting the meaning of the 1974 provision. The 1921 Constitution, however, contained a provision which was virtually identical to the present Art. VII, § 14(A).[4] Although subject to interpretation on numerous occasions by the Attorney General, the 1921 provision also produced little relevant jurisprudence. The cases that do exist hold primarily that this section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. See, e.g., Town of Brusly v. West Baton Rouge Parish Police Jury, 283 So.2d 288 (La.App.), writ denied, 284 So.2d 776 (La.1973) (police jury's attempt to reallocate monies from its surplus to municipalities within the parish held unconstitutional); Beaird-Poulan, Inc. *402 v. Louisiana Department of Highways, 362 F.Supp. 547 (W.D.La.1973) (state could not constitutionally pay relocation expenses when jurisprudence did not permit them and when constitutional amendment allowing them had not yet gone into effect). But see Morial v. Orleans Parish School Board, 332 So.2d 503, 505 (La.App.), writ denied, 337 So.2d 530 (La.1976) (R.S. 17:1201-12, which provides a formula for discovering the amount to be paid a teacher who is absent on sick leave for a period in excess of her accumulated sick leave days, held constitutional as a "legislatively created benefit, earned by virtue of the employment itself.").
It is clear that, absent the language of R.S. 33:1349(C), one municipality could not constitutionally agree nor constitutionally be compelled to pay a claim incurred by another municipality as a result of a tort or workmen's compensation claim. Any such attempt by another municipality would be a donation or a gratuity. Otherwise, it could be a loan. Both are prohibited by Art. VII, § 14(A) of the Constitution.[5] By attempting to impose solidary liability on all members of the fund for unpaid claims, the legislative provision has, in effect, attempted to circumvent the constitutional provision and compel municipalities who participate in the fund to make donations to one another.[6] The "obligation" which the legislature seeks to impose on participating municipalities is therefore prohibited by § 14(A). Exposure to liability for workmen's compensation benefits and general tort liability involve amounts incapable of predetermination. As the trial judge in his reasons for judgment noted, "[i]t strains the imagination to believe the constitution intends that one governmental agency can contract liability for the indefinite and uncertain liability of another."
Likewise, the state's alternative contention that the obligation imposed by R.S. 33:1349(C) is an authorized exception to the prohibitions of § 14(A) is rejected. The solidary liability mandated by the statute is not part of a program for the aid and support of the needy. It is not part of a contribution of public funds to pension and insurance programs for the benefit of public employees. It also has nothing to do with the pledge of public funds with respect to the issuance of bonds to meet public obligations. Thus, § 14(B) does not apply.
Section 14(C) does not help the state, either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations, or to individuals merely for a "public purpose."
It is not clear what the legislature intended when it enacted the present R.S. 33:1349(C). Since it is in the section concerning excess insurance, it may be that the legislature intended no more than that the individual member who incurs the claim would be liable for any amount necessary over and above that member's contribution. *403 If that was the intent, the words chosen do not express it.
For the foregoing reasons, the judgment of the trial court, finding R.S. 33:1349(C), as enacted by Act 808 of 1981, unconstitutional, null and void insofar as it purports to impose solidary liability upon local government subdivisions, is affirmed.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
The majority construes the last clause of Section 1349 C as making each and every member of the association solidarily liable with each other for a claim against any one member. When so construed, this section (added in 1981) irreconcilably conflicts with Section 1347 (enacted as a new law only two years earlier) and arguably violates Art. VII, § 14(A). However, Section 1349 C, when viewed in its entirety and in relation to the other sections of the Act, may be reasonably construed in another way which avoids the constitutional issue.
Since Section 1349 C does not specify that "all fund members" shall be solidarily liable with each other for a claim against any one member, the subsection can also reasonably be interpreted (especially when considered with the first clause of the subsection) as making each fund member solidarily liable with the association (rather than with each other) for a claim against the particular member.[1]
This interpretation is consistent with Section 1347, which limits the liability of a member based on its participation in the self-insurance program, without affecting the member's liability arising from a source other than participation in the insurance program (such as the member's own liability for workmen's compensation or public liability).
As thus interpreted, Section 1349 C does not violate La. Const. Art. VII, § 14(A) (1974).
Several considerations justify this interpretation. The Legislature, in enacting the new scheme of risk reduction in 1979, carefully specified the limitation of liability of each member (except for claims for which the member would be liable regardless of its participation in the association) to member contributions to the funds. The Legislature also expressly disclaimed the effect of the Act's providing for a donation of public funds (indicating an awareness of the constitutional prohibition). Many governmental subdivisions then formed associations, secure in the legislative declaration that the attempt to reduce insurance costs would not result in their becoming exposed to liability for claims against other governmental subdivisions.
Against this background, it is highly unlikely that the Legislature, only two years later, would drastically change the entire scheme of liability exposure by implicit repeal of Section 1347, especially by amendment to an unrelated section which had previously dealt only with the excess insurance requirement imposed on the agency. *404 Thus, although the amendment may be literally interpreted, without regard to other considerations, as making all members liable in solido with each other for every claim not paid by the agency, the fact that the amendment does not specify with whom the solidary liability shall exist gives rise to another interpretation (that each member shall be liable in solido with the agency for a claim against that particular member) which is consistent with the overall provisions of the Act and which avoids constitutional problems.
NOTES
[1] The Local Government Subdivision Self Insurance Act. Because the suit also sought alternatively to declare a statute unconstitutional, the Attorney General has been made a party.
[2] A 1982 amendment added health and accident risk provisions.
[3] R.S. 33:1347 provides:

"A local governmental subdivision shall not by reason of being a member of an interlocal risk management agency and contributing to a group self insurance fund be liable to such interlocal risk management agency, to any other member or to any claimant against the agency, itself or another member, except for payment of contributions provided for in the intergovernmental agreement between the local governmental subdivision and the interlocal risk management agency, and no more. No interlocal risk management agency agreement shall have the effect of providing for a donation, in whole or in part, of the public funds of one local governmental subdivision for the benefit of another, provided, however, that nothing herein shall be construed to in any way reduce or limit a participant's right or obligations with respect to his or its employees under the provisions of Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950."
[4] La. Const. Art. IV, § 12 (1921) provided in part:

"The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, associations or corporations, public or private; nor shall the State, nor any political corporation, purchase or subscribe to the capital stock or stock of any corporation or association whatever, or for any private enterprise...."
[5] The statute could also be viewed as mandating a prohibited pledge of the assets of one member to another. It imposes solidary liability on each member of the fund for any claims not paid by the agency or another member. In effect, this makes the property of every member the common pledge of all potential claimants who become creditors of any member by virtue of an unpaid tort or workmen's compensation claim. See C.C. 3183. C.C. 3141 specifically permits giving a pledge for the debt of another. The legislature, by operation of law, has made each member pledge, in effect, its assets for the debts of another. Such a pledge is prohibited by Art. VII, § 14(A).
[6] Morial v. Orleans Parish School Board, supra, is distinguishable. Even though Mrs. Morial received pay for a period in excess of her sick leave, this was still "earned" compensation, not a gratuity, pursuant to the legislative scheme. The state in the present case argues that the reduced insurance premiums which are a result of the legislative scheme allowing the pooling of risks provide sufficient consideration to defeat the notion that a donation is involved. We disagree, especially in light of the fact that no showing has been made that premiums are reduced any further by the additional imposition of solidary liability.
[1] Arguably, the legislative intent of the entirety of Section 1349 C was to specify in express terms that a governmental subdivision does not escape from tort or workmen's compensation liability by joining an interlocal risk management agency, but remains liable solidarily with the agency and the excess insurer. The first clause of Section 1349 C disclaims any intention to modify a particular member's rights or obligations with its own employees. Thus, the clause makes clear, for example, that membership in the association does not change the member's obligation to pay workmen's compensation benefits to its employees or the member's right to sue a third party to recover compensation paid by the particular member to its employee who is injured by the third party. Likewise, membership in the association does not affect the member's vicarious liability for the torts of its employees or its right to claim contribution or indemnification.

The second clause of Section 1349 C provides for solidary liability for claims that the agency fails to pay. This provision (although referring to members in the plural, as compared to the singular "participant" in the first clause) may reasonably be construed as simply clarifying that a claimant has the right to join the member in a tort or compensation suit (when the claimant otherwise has a cause of action against the member) if the agency or excess insurer refuses or otherwise fails to pay the claim.