Dear Mr. Manning:
On behalf of the Louisiana Economic Development Corporation ("LEDC"), and the Terrebonne Parish Consolidated Government ("Terrebonne"), you have requested an Attorney General's opinion regarding a proposed transfer of immovable property from LEDC to Terrebonne.
According to your correspondence, LEDC is the owner of an industrial building located in Terrebonne Parish, which LEDC originally acquired out of bankruptcy proceedings and by virtue of a default of a loan to Kirk Manufacturing, Inc. which loan was guaranteed by the Louisiana Small Business Equity Corporation, LEDC's predecessor. LEDC then sold the building (in July of 1992) pursuant to credit sale, which sale was rescinded due to the purchaser's default.
You advise that Terrebonne has now proposed that LEDC transfer the building to it, for no monetary consideration, but with only the obligation to use the building for economic development purposes and the assumption of responsibility for the ownership, upkeep and maintenance of the building. Pending resolution of its discussions with Terrebonne, LEDC has not actively marketed the building or sought a buyer for it.
Based upon the foregoing, you have asked this office to respond to two specific questions, as follows:
1. Whether or not it is permissable for LEDC to transfer ownership of the subject property to Terrebonne for the consideration of Terrebonne assuming all liability for said property, holding LEDC and the State harmless of any liability therefrom and by maintaining insurance on said property.
2. If not permissable, then what amount of consideration would be acceptable to validate the proposed transfer?
As you point out, LEDC has been statutorily granted the following power and authority, in accordance with R.S. 51:2312:
 "D. The corporation is hereby authorized and shall have all the authority and power necessary in order to carry out and effectuate the purposes and provisions of this Chapter, including, without limiting the generality of the foregoing, the following specific powers which shall be in addition to others herein granted:
* * *
 (5) To sell, convey, mortgage, lease, transfer, donate, option, exchange, or otherwise dispose of any property, either real or personal, or any interest therein, as the objects and purposes of the corporation may require to carry out the provisions of this Chapter, subject to such limitations as may be prescribed by law."
Furthermore, Act 390 of 1995 (Act 390) purports to authorize and empower LEDC to ". . . convey, transfer, assign, sell, and deliver title, excluding mineral rights, or lease . . ." the subject property to Terrebonne, ". . . with or without monetary consideration . . .".
These provisions of law, must however, be interpreted within the context of La. Const. Art. VII, Sec. 14, which provides, as a general rule, that ". . . the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private." Although this constitutional provision also provides certain exceptions to this rule, those exceptions do not apply to the contemplated transaction.
In response to your first question, it is the opinion of this office that a transfer of this property to Terrebonne for minimal, or no consideration, is prohibited by La. Const. Art.VII, Sec. 14. Although a donation/transfer of property by LEDC is contemplated by R.S. 51:2312, and although Act 390 could arguably be interpreted as authorizing a transfer for little or no consideration, such a transfer would clearly be subject to constitutional challenge.
Our position in this regard is consistent with City of PortAllen v. La. Mun. Risk Management Agency, Inc.,439 So.2d 399 (La. 1983), which interpreted Art. VII, Sec. 14. Therein, Louisiana's Supreme Court set forth the rule that ". . . even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations, or to individuals merely for a `public purpose'." This rule would be equally applicable to cooperative endeavors between the state and a political subdivision, since Art. VII, Sec. 14 applies to the state and its political subdivisions without distinction.
Our opinion herein is also consistent with that expressed in Opinion No. 93-681 (copy enclosed), wherein we determined that Act No. 555 of 1990 (Act 555) could not constitutionally be interpreted to authorize a transfer of property by the State to the City of Harahan for less than fair and equitable consideration. Opinion No. 93-681 provides the answer to your second question, in that it pertinently provides: ". . . the state must receive fair value for any property transferred unless substantial and equivalent public benefits are to be realized."
We trust the foregoing to be of value. Please do not hesitate to contact us if we can be of assistance in other areas of the law.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: __________________________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv
ops/ 95-472
Enclosure
DATE RECEIVED: 11/7/95
DATE RELEASED:
JEANNE-MARIE ZERINGUE BARHAM, ASSISTANT ATTORNEY GENERAL