Dear Judge McGee:
You have asked this office to determine whether monies from the judicial expense fund may be used to supplement the salary of the court crier/bailiff. R.S. 13:996.34[1] provides for the judicial expense fund for the Twenty-Seventh Judicial District. A similar statute (R.S.13:996.26) provides for the judicial expense fund for the Fifteenth Judicial District Court. Concerning the latter statute, this office was asked whether an intergovernmental agreement could be entered into between the district judges and the sheriff where judicial expense funds could be used to provide better trained and qualified bailiffs. In response, the office issued Attorney General Opinion 88-632. The following italicized portion is quoted from the opinion:
Your second question is whether an intergovernmental agreement may beentered into between the district judges and the sheriffs of the judicialdistrict whereby the district judges provide funds from the JudicialExpense Fund to the sheriffs, and in return, the sheriffs provideadditional courtroom and personal security, better trained and qualifiedbailiffs, and transportation to the district judges?
 Article VII, Section 14 of the Louisiana Constitution provides inpertinent part as follows:
 (A) Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the sate or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . .
 * * *
 (C) For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
 Section 14(C) was interpreted by the Louisiana Supreme Court in City ofPort Allen, Louisiana v. Louisiana Municipal Risk Management Agency,Inc., 439 So.2d 399 (La. 1983) at p. 402, where the court stated:
 Section 14(C) does not help the state, either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations, or to individuals merely for a `public purpose.'
R.S. 33:1435(A) requires each sheriff or deputy to attend every courtthat is held in his parish. R.S. 33:1430 sets forth the fee for courtattendance as follows:
 Except in the parish of Orleans, the governing body of the parish shall pay to the sheriff or his deputies attending upon the sessions of their respective courts of appeal and district courts, reimbursement of not less than sixteen dollars nor more than twenty-five dollars for each day and such sums shall be deposited in the sheriff's general fund. The provisions of this Section shall be construed as compensation for performance of the sheriff's duty to attend court as set forth in R.S. 33:1435(A) and in no such case shall the compensation set forth in this Section be construed in such a fashion as to compensate more than one sheriff or sheriff's deputy on any single day per section of court or to require the governing authority to pay a sum exceeding twenty-five dollars per day per section of court unless the court of appeal or district court secures authority from the governing authority of the parish in which the court is located to have on any single day per section of court more than one sheriff or sheriff's deputy in which event the governing body of the parish shall pay the reimbursement specified in this Section based on the number of sheriffs or sheriff's deputies assigned.
 This office, in an opinion dated December 11, 1964, found that criersof district courts other than Orleans are appointed by the sheriff andare actually commissioned as deputy sheriffs by the sheriff. Theirsalaries are set by the sheriff and paid from his salary fund; however,that salary fund is reimbursed by the payment of per diem from the policejury.
 As quoted earlier from R.S. 13:996.26., the Judicial Expense Fund "isestablished and may be used for any purpose or purposes connected with,incidental to, or related to the proper administration or function of thecourt or the offices of the individual judges". Providing better trainedbailiffs and thereby improving the courtroom and personal security forthe judges would be a purpose connected with, incidental to, or relatedto the proper administration or function of the court or the offices ofthe individual judges, and thus, the Judicial Expense Fund could be usedto pay the sheriff for additional and better security.
 As R.S. 33:1435 requires reimbursement for the sheriff's courtattendance to be made by the parish governing authority, it would appearthat the parish governing authority would also have to be a party to anagreement for the providing of additional security. Any agreement betweenthe sheriff and the judges would not abrogate the duty of the parishgoverning authority. (Emphasis added).
In accord with Opinion 88-632, we conclude that the judges and the sheriff may enter into an intergovernmental agreement where monies from the judicial expense fund are used to supplement the salary of the bailiff. This agreement would not abrogate any financial responsibility of the police jury imposed by law; thus, the parish governing authority would also have to be a party to such an agreement. See also Attorney General Opinions 92-742 and 77-1135, copies attached.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
Date Released: May 2, 2003
 Kerry L. Kilpatrick Assistant Attorney General
[1] R.S. 13:996.34 states:
§ 996.34. Judicial expense fund for Twenty-Seventh Judicial District; established; criminal case fees; sheriff's fees; disposition
A. In addition to all other fees or costs now or hereafter provided by law, the clerk of court of the Twenty-Seventh Judicial District shall collect from every person filing any type of civil suit or proceeding, and who is not otherwise exempted by law from the payment of court costs, a sum to be determined by the judges of the district sitting en banc, which sum shall not exceed fifteen dollars, subject to the provisions of Code of Civil Procedure Article 5181 et seq. In all criminal cases over which the Twenty-Seventh Judicial District Court has jurisdiction, there shall be taxed as costs against every defendant who is convicted after trial or after plea of guilty, or who forfeits his bond, a sum determined by the judges of the district sitting en banc but which shall not exceed five dollars, which shall be in addition to all other fines, costs, or forfeitures lawfully imposed and which shall be transmitted to the clerk for further disposition.
B. The clerk of court shall place all sums collected or received under this Section in a separate account to be designated as the Judicial Expense Fund for the Twenty-Seventh Judicial District Court. The judges of the Twenty-Seventh Judicial District sitting en banc shall have control over the fund and all disbursements from the fund. They shall cause to be conducted an annual audit of the fund and the books and accounts relating to the fund and shall file the audit with the office of the legislative auditor where it shall be available for public inspection.
C. The judges of the Twenty-Seventh Judicial District Court sitting en banc may, in lieu of all or any part of the fees for reporting and transcribing testimony authorized under the provisions of R.S. 13:961(F), or other applicable laws, and in addition to salaries otherwise provided, authorized, maintaining any type of equipment, supplies, or other items consistent with or germane to the efficient operation of the court. In general, the judicial expense fund is established and may be used for any purpose or purposes connected with, incidental to, or related to the proper administration or function of the court or the offices of the individual judges and is in addition to any and all other funds, salaries, expenses, or other monies that are now or hereafter provided, authorized or established by law for any of the aforesaid purposes.
D. No salary shall be paid from the Judicial Expense Fund for the Twenty-Seventh Judicial District to any of the judges of the Twenty-Seventh Judicial District except as may be paid for administering the fund and then only after prior legislative approval.
E. (1) In addition to all other fees or costs now or hereafter provided by law, the clerk of court of the Twenty-Seventh Judicial District shall collect a fee of fifteen dollars from every person who is convicted, after trial, by a guilty plea, or by forfeiture of bond, of a crime or traffic offense. Such fee shall be in addition to all other fines, costs, or forfeitures lawfully imposed expenditure by it meeting the costs of housing, feeding, and maintaining persons in the parish prison and for payment of jury and witness fees associated with criminal cases.
F. In addition to all other fees or costs now or hereafter provided by law, the sheriff of St. Landry Parish shall be entitled to a fee of ten dollars in all criminal cases against every defendant who is convicted after trial or after he pleads guilty or who forfeits his bond. This fee shall be remitted to the sheriff of St. Landry Parish to be used in defraying the expenses of his office and he may use all methods available under the law to enforce and collect same.
OPINION NUMBER 88-632
January 31, 1989
56 — Judges
R.S. 13:694; R.S. 13:996.25; R.S. 13:996.26; R.S. 13:996.27; R.S. 13:691; R.S. 42:851; R.S. 33:1435(A); R.S. 33:1430; Art. VII, § 14
of La. Const. of 1974; Act 348 of 1988
Discussion of the use of Judicial Expense Fund of the Fifteenth Judicial District.
Mr. Robert E. Harroun, III General Counsel to the Legislative Auditor P.O. Box 94397 Baton Rouge, LA 70804-9397
Dear Mr. Harroun:
You requested the opinion of this office concerning whether certain expenses could be paid from the Judicial Expense Fund for the Fifteenth Judicial District Court.
The Judicial Expense Fund is established by R.S. 13:996.25 which provides in pertinent part as follows:
 "A. In addition to all other fees or costs now or hereafter provided by law, the clerk of court of the Fifteenth Judicial District shall collect from every person filing any type of civil suit or proceeding and who is not otherwise exempted by law from the payment of court costs, a sum to be determined by the judges of said district . . .
 B. The clerk of court shall place all sums collected or received under this section in a separate account to be designated as the Judicial Expense Fund for the Fifteenth Judicial District Court. The judges, en banc, of the Fifteenth Judicial District shall have control over the fund and all disbursements made therefrom . . ."
R.S. 13:996.26 authorizes disbursements from the Judicial Expense Fund and provides as follows:
 "The judges, en banc, of the Fifteenth Judicial District Court may, in lieu of all or any part of the fees for reporting and transcribing testimony authorized under the provisions of R.S. 13:961(F), or other applicable laws, and in addition to salaries otherwise provided, authorized, or established by law, fix and pay each of their court reporters a salary from the judicial expense fund. The judges, en banc, may further appoint such secretarial, clerical, research, administrative, or other personnel as they deem necessary to expedite the business and function of the court and fix and pay all or any part of the salaries of such personnel out of the monies in the judicial expense fund. In like manner, the judges, en banc, may utilize the monies in the judicial expense fund to pay all or any part of the cost of establishing and/or maintaining a law library for the court, or for buying and/or maintaining any type of equipment, supplies, or other items consistent with or germane to the efficient operation of the court. In general, the judicial expense fund is established and may be used for any purpose or purposes connected with, incidental to, or related to the proper administration or function of the said court or the offices of the individual judges and is in addition to any and all other funds, salaries, expenses, or other monies that are now or hereafter provided, authorized, or established by law for any of the aforesaid purposes." (Emphasis supplied.)
R.S. 13:996.27 further provides with respect to the Judicial Expense Fund:
 "No salary shall be paid from the Judicial Expense Fund for the Fifteenth Judicial District to any of the judges of the Fifteenth Judicial District except as may be paid for administering the said fund, and then only after prior legislative approval." (Emphasis supplied.)
Your first question is whether monies in the Judicial Expense Fund can be used to pay for medical insurance or a supplemental medical insurance policy for the judges. I was advised by Judge Cox that the judges of the Fifteenth Judical District Court are members of the State Employees' Group Benefits Program.
R.S. 13:691, pertaining to the compensation to be paid district, family and juvenile court judges, provides in pertinent part as follows:
 "C. No judge whose salary is provided for herein shall receive for his services as a judge, directly or indirectly, any additional salary, compensation, emolument, or benefit from the state or any of its political subdivisions except (1) retirement benefits, (2) reimbursement of those expenses provided for and authorized by R.S. 13:694, 13:698, and 13:1341.2, (3) membership in group insurance programs, and (4) educational grants." (Emphasis supplied.)
R.S. 42:851 pertains to state health and accident insurance and provides in pertinent part as follows:
 "A. (1)(a) The state of Louisiana and each of its governmental and administrative subdivisions, departments, or agencies of the executive, legislative, or judicial branches . . . are authorized to:
 (i) Procure private contracts of insurance covering their respective employees, officials, and department heads, or any class or classes thereof, and the dependents of such employess, officials, or department heads under a policy or policies of group health, accident, accidental death and dismemberment, and hospital, surgical, or medical expense benefits; or
 (ii) Adopt, administer, or operate or contract for all or a portion of the administration, operation, or both of a self-funded program for that purpose.
 (b) Each such private contract or self-funded program, the premiums of which are paid in whole or in part with state funds, shall be approved by the Board of Trustees of the State Employees; Group Benefits Program . . .
 (c) The contribution of the state or any other entity herein enumerated in all cases shall not exceed fifty percent of the total premium out of funds contributed by the state.
 (3) . . . the amount paid toward the premium by the state or any of its governmental and administrative subdivisions, departments, or agencies . . . shall be subject to the approval of the board." (Emphasis supplied.)
The monies in the Judicial Expense Fund are public funds. They cannot be construed to be local funds, inasmuch as the district court judges are state official (see A.G. Op. 76-89); therefore, the funds under the judges control must be state funds. It should be noted that the current Judicial Appropriation Act, Act No. 348 of the 1988 Regular Session of the Louisiana Legislature, contains an appropriation for the payment of the Commissioner of the Fifteenth Judicial District Court and the Commissioner's office expenses from the Judicial Expense Fund.
As the monies in the Judicial Expense Fund are state funds, the monies in the Judicial Expense Fund can be used to the judges, if other state funds are not already being used for that purpose. R.S. 42:851(A)(1)(c). If the state is presently paying fifty percent of the premiums for the existing health insurance, then the monies in the Judicial Expense Fund cannot be used to pay for additional premiums for the existing group health insurance or for supplemental health insurance unless a supplemental insurance policy is submitted to and approved by the Board of Trustees of the State Employees' Group Benefits Program pursuant to R.S. 42:851(A)(1)(b). I spoke with a representative of the State Employees' Group Benefits Program who advised that the Board of Trustees historically has not approved supplemental plans inasmuch as the plans did not attempt to give equal coverage to all members of the State Employees' Group Benefits Program.
Your second question is whether an intergovernmental agreement may be entered into between the district judges and the sheriffs of the judicial district whereby the district judges provide funds from the Judicial Expense Fund to the sheriffs, and in return, the sheriffs provide additional courtroom and personal security, better trained and qualified bailiffs, and transportation to the district judges?
Article VII, Section 14 of the Louisiana Constitution provides in pertinent part as follows:
 "(A) Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the sate or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . .
* * *
 (C) For a public purpose, the state and its political subdivision or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
Section 14(C) was interpreted by the Louisiana Supreme Court in City ofPort Allen, Louisiana v. Louisiana Municipal Risk Management Agency,Inc., 439 So.2d 399 (La. 1983) at p. 402, where the court stated:
 "Section 14(C) does not help the state, either. There is no indication that it is meant to be an exception to the rule of § 14(A); the exceptions are clearly contained in § 14(B). Thus, even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or cooperations, or to individuals merely for a `public purpose.'" Emphasis supplied.)
R.S. 33:1435(A) requires each sheriff or deputy to attend every court that is held in his parish. R.S. 33:1430 sets forth the fee for court attendance as follows:
 "Except in the parish of Orleans, the governing body of the parish shall pay to the sheriff or his deputies attending upon the sessions of their respective courts of appeal and district courts, reimbursement of not less than sixteen dollars nor more than twenty-five dollars for each day and such sums shall be deposited in the sheriff's general fund.
 The provisions of this Sections shall be construed as compensation for performance of the sheriff's duty to attend court as set forth in LA.R.S. 33:1435(A) and in no such case shall the compensation set forth in this Section be contrued in such a fashion as to compensate more than one sheriff or sheriff's deputy on any single day per section of court or to require the governing authority to pay a sum exceeding twenty-five dollars per day per section of court unless the court of appeal or district court secures authority from the governing authority of the parish in which the court is located to have on any single day per section of court more than one sheriff or sheriff's deputy in which event the governing body of the parish shall pay the reimbursement specified in this Section based on the number of sheriffs or sheriff's deputies assigned." (Emphasis supplied.)
This office, in an opinion dated December 11, 1964, found that criers of district courts other than ORleans are appointed by the sheriff and are actually commissioned as deputy sheriffs by the sheriff. Their salaries are set by the sheriff and paid from his salary fund, however, that salary fund is reimbursed by the payment of per diem from the police jury.
As quoted earlier from R.S. 13:996.26., the Judicial Expense Fund "is established and may be used for any purpose or purposes connected with, incidental to, or related to the proper administration or function of the court or the offices of the individual judges". Providing better trained bailiffs and thereby improving the courtroom and personal security for the judges would be a purpose connected with, incidental to, or related to the proper administration or function of the court or the offices of the individual judges, and thus, the Judicial Expense Fund could be used to pay the sheriff for additional and better security.
As R.S. 33:1435 requires reimbursement for the sheriff's court attendance ti be made by the parish governing authority, it would appear that the parish governing authority would also have to be a party to an agreement for the providing of additional security. Any agreement between the sheriff and the judges would not abrogate the duty of the parish governing authority.
The next question is whether deputy sheriffs can provide additional security to the judges by transporting them from one courthouse to another courthouse in the same judicial district. This raises questions concerning the jurisdiction of a deputy sheriff from one parish who is driving a judge to the courtjouse in another parish. An agreement would have to be structured between all the sheriffs in the judicial district. Of course if the judges were driven, the judges would no longer be entitled to be reimbursed for those traveling expenses as R.S. 13:694
only authorizes the reimbursement of actual expenses.
Furnishing transportation from the judges homes to the courthouses might violate R.S. 13:691, quoted above, which prohibits judges being paid any additional salary, compensation, emolument, or benefit; however, R.S. 13:694 and Rule 13:694.1(d) of the Louisiana Supreme Court provide that judges are entitled to travel expenses except that no allowance shall be granted for round trips of less than ten miles from the judge's bona fide residence to the place or places where he performs the official dutues of his office. If the judge lives further away than ten miles, round trip, it would be permissible to use the Judicial Expense Fund to pay the sheriff for providing such security. Any judge who uses a sheriff to drive him from his home to the courthouse should contract his personal Certified Public Accountant, as that might be considered income which would have to be declared under the Internal Revenue Code.
Your third question is whether the sheriff of Acadia Parish can be reimbursed if he provides a receptionist for the district judges.
R.S. 13:996.26 authorizes the judges to appoint "such secretarial, clerical, research, administrative, or other personnel as they deem necessary to expedite the business and function of the court and fix and pay all or any part of the slaaries of such personnel out of the monies in the judicial expense fund".
It is the opinion of this office that the Acadia Parish sheriff and the judges of the Fifteenth Judicial District Court may enter into a cooperative endeavor agreement whereby the sheriff provides a receptionist for the court and the court recompenses the sheriff.
Trusting this adequately responds to your request, I remain.
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY:___________________________ MARTHA S. HESS Assistant Attorney General
MSH:jav
cc: Judge Ronald D. Cox
OPINION NUMBER 92-742
December 3, 1992
Security in the courthouse is the responsibility of the governing authority, but an agreement may be made between the parishes officers in the building to share the expense.
10 — Clerks of Court
90 — Police Juries
R.S. 33:4713
Ms. Winifred B. Brinkley Clerk of Court, 26th Judicial District P.O. Box 370 Minden, LA 71058-0370
Dear Ms. Brinkley:
This office is in receipt of your request for an opinion of the Attorney General regarding cost of security at the entrance of the Courthouse. The Webster Parish Police Jury has proposed a plan for a deputy sheriff to be assigned to operate the security system at the entrance of the courthouse with the Assessor, Sheriff and Clerk of Court contributing to the salary and benefits of the deputy. You state that you feel the security of the building is the responsibility of the police jury, and question the legality of the self-generated funds of the Clerk of Court being put to such use. Therefore, you ask as follows:
 Whether you can or can not legally contribute to the salary of an employee of the sheriff's department.
In Atty. Gen. Op. No. 89-282 this office recognized the clerk of court could enter into an agreement with the Tangipahoa Parish Council to cover the expenses for utilities of the courthouse, noting that this would enable the Clerk's office to remain open in the event the parish continued to suffer financial problems. It was reasoned political subdivisions are authorized by Art. VI, Sec. 20 to execise and perform any authorized power and function, including financing, jointly or in cooperation with one or more political subdivisions. Since the Clerk is required by R.S. 13:785 to pay into the parish treasury, at the expiration of his term, any balance in the clerk's salary fund which exceeds one-half of the revenues of the last year of the term, it was concluded the Clerk and the Parish Council could structure an intergovernmental agreement whereby the monies owed by the Clerk from the salary fund at the end of the Clerk's term would be offset by the monies paid by the Clerk during the term for utilities in the courthouse. It was found in such a situation, there is no donation of public funds and there is no violation of Art. VII, Sec. 14 of the Constitution.
Under R.S. 13:783(A) the clerk shall defray all expenses out of the clerk's salary fund, and it would be logical to conclude security at the entrance to the court house is a benefit to all that utilize the building, and therefore, would be a valid expense that can be defrayed by the clerk's office, and for which the clerk could enter into an intergovernmental agreement for such expense.
Although you simply ask whether or not you can legally contribute to the salary of the deputy provided for security, your inquiry infers that you question if you must join in this expense. You state you believe it is the responsibility of the police jury, and that it would be a financial hardship on your office.
While we believe it would be legal for you to enter into the agreement to contribute to the additional security, we do not find this is a responsibility to which you are mandared to participate. In accordance with R.S. 33:4713 each parish shall provide and bear the expense of a suitable building and requsite furniture for the district and circuit courts and "such offices, furniture and equipment as may be needed by the clerks and recorders of the parish for the proper conduct of their offices * * * and shall provide the necessary hear and illumination therefore." R.S. 33:4715 requires the police jury to provide a good and sufficient courthouse.
Based upon these statutes we agree with your conclusion that the security is a responsibility of the governing authority.
In Atty. Gen. Op. No. 88-632 this office stated that the judicial expense fund could be used to pay the sheriff for additional and better security to improve the courtroom and personal security of the judges. However, since R.S. 33:1435 requires reimbursement for the sheriff's court attendance by the parish governing authority, it was concluded the parish governing authority would also have to be a party to an agreement for providing additional security. It was stated, "Any agreement between the sheriff and the judges would not abrogate the duty of the parish governing authority." See also, Atty. Gen. Op. No. 77-1135.
Consequently, we must conclude that security provided in the courthouse is the responsibility of the governing authority, but an agreement may be made by the parish officers in the building to share the expense.
We hope this sufficiently answers your question, but if we can be of further assistance, please do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY: ___________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR/0292f
OPINION NUMBER 77-1135
August 11, 1977
Municipalities — 71
Municipalities-Special Charter — 71-1-A
Sheriffs — 107
Art. XIV § 3(A) 1921 Const. Art. V § 27, 1974 Const. R.S. 33:1435; R.S. 33:4713
Mayor-President has jurisdiction over City-Parish office building for issuance of I.D. cards pertaining to entry of building after hours.
Ms. Mary Olive Pierson Betchok, Cooper Pierson Post Office Box 14647 Baton Rouge, Louisiana 70808
Dear Ms. Pierson:
You have requested an opinion of this office on the question of whether the responsibility for security of the new governmental complex and courthouse lies with the East Baton Rouge Parish Sheriff's Office or the Baton Rouge Police Department. You request was made on behalf of the Honorable J. Al Amiss, Sheriff, East Baton Rouge Parish.
Article XIV, Section 3(a), Louisiana Constitution of 1921 authorized the electorate of the Parish of East Baton Rouge and the City of Baton Rouge to adopt a plan of government. The "Plan of Government of the Parish of East Baton Rouge and the City of Baton Rouge" provides in Section 4.03 as follows:
 "SECTION 4.03. Chief Executive Officer of the Parish and City. The mayor-president shall be the chief executive officer of the parish and city and shall have power, subject to this plan of government, the ordinances and resolutions of the councils adopted in pursuance thereof, and the constitution and general laws of the state, to supervise and direct the administration of all departments, offices and agencies of the parish and city governments the heads of which are appointed by him. He shall have all the powers and duties, not inconsistent with the provisions of this plan of government, conferred or imposed on the mayor of the City of Baton Rouge by its charter or which may be conferred or imposed on the mayors of cities by the general laws of the state applicable to such city. . . ."
Article V, Section 27, Louisiana Constitution of 1974, provides as follows:
"§ 27. Sheriffs
 Section 27. In each parish a sheriff shall be elected for a term of four years. He shall be the chief law enforcement officer in the parish, except as otherwise provided by this constitution, and shall execute court orders and process. He shall be the collector of state and parish ad valorem taxes and such other taxes and license fees as provided by law. This Section shall not apply to Orleans Parish."
R.S. 33:1435(A) specifies additional duties of the sheriff:
 "A. Except in the parish of Orleans, the sheriff shall be ex officio collector of state and parish taxes.
 Each sheriff or deputy shall attend every court that is held in his parish, and shall execute all writs, order, and process of the court or judge thereof directed to him.
 Each sheriff shall be keeper of the public jail of his parish and shall preserve the peace and apprehend public offenders." (See Also: R.S. 33:4713)
The new governmental complex building will house municipal, and parish offices as well as the Court of Appeal, district courts and District Attorney. It is our understanding that the former buildings, the Municipal Building and the East Baton Rouge Parish Courthouse, will be converted into a law enforcement complex and that the existing jail facilities will remain in the present locations.
The crux of your question is whether the Sheriff's department or the police department has the exclusive power and authority to issue identification badges to personnel who seek to enter the new complex after normal working hours.
Based on the foregoing quoted provisions, it is the conclusion of this office that, in the absence of specific ordinances or resolutions of the East Baton Rouge City Parish Council, the security of the building is within the jurisdiction of the Mayor-Presdient.
We reach this conclusion because our analysis of the problem reflects that the type of jurisdiction to be effected is an executive-administrative act which we believe is the responsibility of the chief executive of the city-parish government.
We recognize fully the constitutional authority of the Sheriff as chief law enforcement officer of the Parish of East Baton Rouge; however, the jurisdiction to be exercised in this instance is not, technically speaking of a law enforcement nature. With this in mind, we want to emphasize that our conclusion is not intended to mitigate in any way the power and authority of the Sheriff to enforce all laws or ordinances on the premises of the building as the Sheriff certainly has the power and responsibility to prevent and investigate criminal violations which might occur upon the premises of the building — a power which is shared with other state and local law enforcement agencies.
It is our understanding that the Chief of Police has issued special identification cards for the above mentioned security purposes. Under the plan of government the Chief of Police is directly responsible to the Mayor-President, (Section 4.03 and Section 9.05) and presumably, the issuance was accomplished with the knowledge and consent of the Mayor-President. Thus, we would conclude that the issuance by the Chief of Police is a valid exercise of executive and administrative act performed on behalf of the Mayor-President which is consistent with the plan of government.
Finally, we wish to again emphasize that our conclusion is tempered by the assumption that the City-Parish Council has not adopted any specific ordinances or resolutions to the contrary, and that the authority to provide for the administrative control may well be within the legislative prerogative of the Council. (Plan of Government, Section 3.01 and 3.02).
Sincerely,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY: ___________________________ KENNETH C. DEJEAN Assistant Attorney General
KCD/sds
cc: Honorable W. W. Dumas Mayor-President City of Baton Rouge Parish of East Baton Rouge