Dear Mr. Spruel:
This office is in receipt of your request for an Attorney General's opinion on behalf of Recreation District No. 1, Ward 4 of Calcasieu Parish (the "District"), regarding a contemplated agreement (the "Agreement") between the District and the City of Westlake for the construction, operation and maintenance of an 18-hole public golf course and complex. With respect thereto, you advise:
 "Under the contemplated agreement, Recreation District No. 1 would call an election for the purpose of issuing General Obligation Bonds for the construction of a golf complex, hiking and biking trails, infrastructure and equipment. Additionally, Recreation District No. 1 would call an election for the purpose of passing an operation and maintenance tax for the golf complex.
 The golf complex would be constructed on land owned by the City of Westlake. Operation and maintenance of the golf complex would be vested in a five (5) member board. Two (2) members of the board would be appointed by the City Council of Westlake, two (2) members would be appointed by the Board of Commissioners of Recreation District No. 1, Ward 4 and one (1) member would be appointed by mutual agreement between the two governing bodies."
Specifically, you seek the opinion of this office as to whether or not the District's entering into an agreement such as the one you have described violates any state legal or constitutional provisions, particularly in light of the fact that the District will not have an ownership interest in the golf complex. In other words, we are called upon to determine if the Agreement can be considered to be a legally sanctioned cooperative endeavor.
Implicitly, your question must be addressed in light of La. Const.Art. VII, Sec. 14(A), which generally prohibits the "funds, credit, property or things of value of the state or of any political subdivision" from being "loaned, pledged, or donated to or for any person, association, or corporation, public or private." La. Const. Art. VII, Sec. 14(C) provides that "for a public purpose political subdivisions may engage in cooperative endeavors with each other "
This office has long recognized the caution which must be exercised in the expenditure of public funds. Historically, the Attorney General has followed the Louisiana Supreme Court's interpretation of La. Const. Art. VII, Sec. 14, as set forth inCity of Port Allen v. Louisiana Municipal Risk Agency,439 So.2d 399 (La. 1983), wherein the Court stated: " this Section is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so." The previous opinions of this office recognize that the requirement of a legal obligation or authority to expend public funds or use public property is the threshold, but not the only predicate for the constitutionality of the expenditure or use. The expenditure must also be for a public purpose and create a public benefit proportionate to its cost. Attorney General'sOpinion No. 90-63. See also: Attorney General's Opinions Nos.02-0125; 01-0389.
With respect to the District's obligation to provide funding and other resources pursuant to the Agreement, we must examine the District's statutory authority. In this regard, we assume the District was created in accordance with the authority vested in "the police jury of any parish of this state" by LSA R.S. 33:4562A
to "form and create recreation district or districts by wards or otherwise ". In accordance with LSA-R.S. 33:4562B such districts:
 "have the authority to cooperate with any political subdivision of the state for the construction, operation, and maintenance of facilities designed to accomplish the purpose for which the district is created on any basis including the matching of funds and by the participating in projects authorized by federal or state law as it shall see fit."
In accordance with LSA-R.S. 33:4563, the objects and purposes for which such recreation districts are created are to:
 "own and operate playgrounds and other facilities; or generally to engage in activities which would promote recreation and any related activity designed to encourage recreation and promote the general health and well being of youths."
We note the additional authority granted to recreation districts by LSA-R.S. 33:4566, which pertinently provides that recreation districts created under the provisions of LSA-R.S. 33:4562:
 " for the purpose of purchasing and acquiring lands, buildings equipment and other facilities, and for the construction and maintenance thereof are authorized to vote and levy special maintenance taxes and issue bonds when authorized to do so by a vote of the qualified electors of the district and as authorized by the Constitution and laws of the state of Louisiana in the same election to issue bonds the board may also submit to the qualified electors of the district a proposition to levy a special tax not to exceed fifteen mills on the dollar for a period not to exceed ten years for the purpose of maintaining and operating said district."
Consideration should also be given to the provisions of LSA-R.S.33:1324 which authorizes political subdivisions of this state to:
 " make agreements between or among themselves to engage jointly in the construction, acquisition or improvement of any public project or improvement, the promotion and maintenance of any undertaking or the exercise of any power, provided that at least one of the participants to the agreement is authorized under a provision of general or special law to perform such activity or exercise such power as may be necessary for completion of the undertaking. Such arrangements may provide for the joint use of funds, facilities, personnel or property or any combination thereof necessary to accomplish the purposes of the agreement, and such agreements may include but are not limited to activities concerning:
* * *
 (5) Recreational and educational facilities, such as playgrounds, recreation centers, parks and libraries."
Certain previous opinions of this office are also pertinent to your request.
Attorney General's Opinion No. 92-722 determined that the Recreation and Park Commission for the Parish of East Baton Rouge (BREC) could enter into a cooperative endeavor with the Santa Maria Partnership in Commendum to share the cost of a public access road and to pay for a railroad grade crossing to afford public access to the Santa Maria Golf Course. BREC's agreements constituted "a valid obligation" authorized by its statutory duty to contract for the development of public recreational facilities such as the golf course. Additionally, we concluded that BREC's expenditures with respect to the golf course served a public purpose; that of affording the general public access to the Santa Maria golf course and its related facilities.
Also pertinent is Attorney General's Opinion No. 80-1238 which determined that pursuant to a valid cooperative endeavor, Recreation District No. 5 of Livingston Parish could provide funds to transfer ownership of and maintain a gymnasium to a local school board.
In accordance with the above referenced authorities, it is the opinion of this office that the District has the requisite legal obligation or authority to expend public funds for the golf course. Additionally, it is our opinion that the recreational opportunities to be provided to the District's citizenry by the golf complex provide the requisite public purpose for the Agreement. As noted above, however, the Agreement must also create a public benefit proportionate to its cost.
Assuming the Agreement does create a public benefit proportionate to its costs, it is our opinion that the Agreement should be considered to be in the nature of a constitutionally sanctioned cooperative endeavor. In this regard, however, we must advise that this office is not a finder of fact, and is therefore not in a position to determine whether or not the value of the District's expenditures and obligations under the Agreement will provide a benefit for its citizens that is proportionate to the costs the District will agree to undertake. That determination must be made by the District, after consultation, if it so desires, with its legal counsel, financial and other advisors.
Presumably, in light of the fact that the District will have no ownership interest in the golf complex, the District will also have to carefully weigh the benefits its citizens will receive against the risks the District will be required to undertake with respect to the golf complex.
Based upon the foregoing, assuming the District properly determines that the value of its expenditures and obligations under the Agreement will create a benefit for its citizens that is proportionate to the risks and costs associated therewith, it is the opinion of this office that the Agreement should be considered to be a valid cooperative endeavor. In response to your specific question, assuming the District properly determines that the value of its expenditures and obligations under the Agreement will create a benefit for its citizens that is proportionate to its risk and cost, it is the opinion of this office that the Agreement will not violate any state legal or constitutional provisions, even though the District will not have an ownership interest in the golf complex.
We trust the foregoing to be of assistance. Please do not hesitate to contact this office if we can be of assistance in other areas of the law.
Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
BY: ________________________________
 JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
CCF, jr./JMZB/dam