Dear Mayor Fontenot:
On behalf of the Town of Simmesport ("Town"), you have requested an opinion of this office regarding the enforceability of an Agreement approved by the Board of Alderman ("Board") and executed by you, as Mayor, and the legality of an Amended Agreement approved by the Board but not executed by you as Mayor. Submitted with your request was the Original Agreement between the Town of Simmesport and Canadaville Louisiana USA, Inc. ("Canadaville") signed by the Mayor October 18, 2005; the October 28, 2005, Minutes of the special meeting of the Mayor and Board of Alderman and attached Resolution wherein the Board approved the Agreement; the May 8, 2006, Minutes of the regular meeting of the Mayor and Board of Alderman and attached Resolution wherein the Board approved the Amended Agreement; and the unexecuted Amended Agreement between the Town and Magnaville, successor in name to Canadaville.
According to your request, the Town of Simmesport, approved, signed and recorded the original Agreement with Canadaville. The Agreement, in summary, requires Canadaville to facilitate the creation of a housing development ("Development") near the Town of Simmesport, Louisiana and pay to the Town $50,000 per year for five (5) years to fund three (3) full time policeman; provide two (2) fully equipped police vehicles, make available, furnish and equip a police substation; construct a community center, parking lot and recreational facilities; employ at least 40 persons for four (4) months at a minimum pay rate of $7.25 per hour; and within 6 months of completion of the construction projects transfer the projects to the Town. In return the Town would provide utility services to the Development, waive all utility connection charges, maintain and repair all utility lines of the facilities constructed by Canadaville and donated to the Town. The Agreement further provides that the donations to be made by Canadaville are conditioned, in part, on the annexation of the Development property into the corporate limits of Simmesport. The proposed Amended Agreement approved by the Board of Alderman would remove most of the required transfers, donations and cash payments to be made to the Town by Canadaville.
Specifically, you request the opinion of this office on whether the Amendment Agreement approved by the Board May 8, 2006, is legal or constitutional; whether the *Page 2 
Town can enforce the provisions of the original agreement; and finally, whether you, as Mayor, without Board approval, may file suit to void certain provisions of the the amended agreement.
 Law Past Attorney General Opinions
As a Lawrason Act Municipality, the Town of Simmesport is subject to the "Lawrason Act" statutes, LSA-R.S. 33:321, et seq. Under the Lawrason Act, the municipality is governed by a mayor-board of alderman form of government with the legislative powers vested in the board of alderman and the mayor acting as the chief executive officer of the municipality. LSA-R.S. 33:362. The mayor/alderman system allows for checks and balances to ensure that neither the mayor nor the Board of Alderman exceeds its authority or acts unilaterally. LSA-R.S. 33:404 sets forth the duties of the mayor and provides, in part, as follows:
(A) The mayor shall have the following powers, duties, and responsibilities:
(4) To sign all contracts on behalf of the municipality.
According to this provision, one of the duties of the Mayor is to sign all contracts of behalf of the municipality. However, if the contract involves the expenditure of funds belonging to the municipality or if the contract requires the municipality to incur debt, then both the Mayor and the Board of Alderman must concur in the expenditure or contract and, if so, then the mayor would sign the contract on behalf of the municipality. Atty. Gen. Op. Nos. 95-226, 94-522, 93-283, 95-226. If the mayor does not approve and sign a contract as required by LSA-R.S.33:404(A)(4) then the contract is without any legal effect.
 Response to Specific Questions (1) Is the amendment to the agreement passed in May 8, 2006, Board ofAlderman constitutional or legal since it removed several hundredthousands of dollars from the town?
Because the proposed amended contract includes the expenditure of municipal funds and/or transfer of property belonging to the municipality, the Board of Alderman and Mayor must concur in the contract and thereby authorize the Mayor to execute the Amended Agreement on behalf of the municipality. It is clear by the minutes of the Board's meeting that the Board supports the Amended Agreement. However, pursuant to LSA-R.S. 33:404(A) the Amended Agreement is not a valid contract and will have no legal effect until signed by the Mayor.
Your question regarding the constitutionality of the Amended Agreement, if signed, must be addressed in light of Louisiana Constitution Article VII, Section 14 provides, in pertinent part, as follows: *Page 3 
 "§ Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . .'
 * * * (C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
As quoted above, Paragraph (A) generally prohibits the loan, pledge, or donation of public funds. Paragraph (C) of Section 14 authorizes the state and its political subdivisions, to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private associations and corporations and/or individuals. However, Paragraph (C) merely supplements the prohibition against donations contained in Paragraph (A). It does not create an exemption or exception from the general constitutional norm. In other words, the cooperative endeavor must meet the general standards for the non-gratuitous alienation of public funds established in Paragraph (A).
In interpreting this provision this office followed the guidelines expressed in City of Port Allen v. Louisiana Risk Management, et al.,439 So.2d 399 (La. 1983), which held that Article VII, Section 14 was violated "whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so". Accordingly, our office consistently opined that in order to be constitutionally sanctioned, a cooperative endeavor must meet the following three requirements: 1) The entity must have a legal obligation to expend public funds; 2) The agreement must be for a public purpose; and 3) The cost must be proportionate to the public benefit. Atty. Gen. Op. Nos. 90-63, 90-651, 92-722, 01-0389 and 02-0125.
However, in The Board of Directors of the Industrial Development Boardof the City of Gonzales, Louisiana, Inc. v. All Taxpayers, propertyowners, citizens of the City of Gonzales, et al., 2006 WL 2548480 (La.), 2005-2298 (La. 9/6/06), the Louisiana Supreme Court found the City ofPort Allen standard to be an "unworkable and incorrect interpretation of La.Const. art. VII, Section (A)" and accordingly articulated a new standard. The new standard effectively holds that Article VII, Section 14 is violated "only when the public funds or property are gratuitously alienated".
Whether public funds or property are "gratuitously alienated" ultimately depends on the facts and circumstances surrounding the proposed expenditure or transfer. As a general rule, the Attorney General's Office refrains from conducting factual evaluations. However, in order to be acceptable, we believe a cooperative endeavor agreement *Page 4 
must now meet the following three requirements: 1) The entity must have the legal authority to enter into the agreement; 2) The agreement is for a public purpose; and 3) there is a reasonable expectation of receiving equivalent value in exchange for the proposed expenditure or transfer of public funds or property. While it appears that the Town maintains the legal authority to enter into the Amended Agreement and the Amended Agreement would be for a public purpose, if there is not a reasonable expectation of the part of the Town to receive equivalent value for the original obligations that are to be released by the Town in the Amended Agreement, then the signing the Amended Agreement may constitute a donation of public funds or property that is prohibited by Article VII, Section 14 of the Louisiana Constitution.
(2) Can the town make Magnaville perform the terms of the firstagreement?
Without a duly executed Amended Agreement, the original agreement remains in full force and effect with both parties to the agreement having full expectation that each will fulfill the obligations set forth therein or suffer damages for breach.
(3) Can I, as mayor, without council approval, go to court to attemptto get this back for the town?
This question is moot inasmuch as the original contract has yet to be amended due to your failure to approve of and sign the Amended Agreement.
Accordingly, it is the opinion of this office that in order for the Amended Agreement to have any legal effect and pursuant to LSA-R.S.33:404A the Mayor must sign the agreement. Unless and until the Amended Agreement is signed by the Mayor the original Agreement signed by the Mayor October 18, 2005, remains in full force and effect
We trust this adequately responds to your request. If you have any questions or comments, please do not hesitate to contact our office.
With kindest regards,
Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY: __________________________
 RICHARD L. MCGIMSEY
 Assistant Attorney General