Dear Mr. Minsky,
You have requested an opinion of this office regarding whether the Fifth Louisiana Levee District may provide lunches to inmates who are working on the levee system along with your maintenance crews. According to your request, the inmates that have been helping the Levee District are trustees, not work release inmates. According to the Department of Public Safety and Corrections, this means the inmates remain in the custody and control of the Department of Corrections during the period in which they are working for you.
There are several laws applicable to feeding of prisoners. La.R.S.15:705(A)(1) provides:
 The sheriffs or jailkeepers shall supply each prisoner daily with wholesome food sufficient in quantity for the proper maintenance of life.
La.R.S. 15:566 provides, in pertinent part:
 A. The Department of Corrections shall pay the sum of eighteen dollars and twenty-five cents per day to the sheriff of each parish, or to the governing authority of those parishes in which said authority operates the parish jail, for feeding and maintaining each prisoner who has been convicted of a crime and sentenced to imprisonment at a state penitentiary, who is held in the parish jail without bail, pending an appeal. Each sheriff shall file a monthly report with the Department of Corrections and the local governing authority and shall be paid for such charges on a monthly basis by the Department of Corrections. However, in the parish of Orleans, said payment shall be to the criminal sheriff of the parish of Orleans, to be reimbursed to the city of New Orleans. *Page 2 
 When the Department of Corrections makes payment in accordance with this Subsection, no additional compensation from the parish governing authority shall be paid for the care of such prisoners.
La.R.S. 33:1432 provides, in pertinent part:
 The compensation, fees, and costs allowed sheriffs, the parish of Orleans excepted, for all services in criminal matters, shall be the following:
 (1) For keeping and feeding of prisoners in jail not less than three dollars and fifty cents per diem for each prisoner. Any surplus funds remaining at the end of the fiscal year shall be returned to the parish governing authority.
In the opinion of this office, La.R.S. 15:566 would not prohibit the Levee District from entering into a cooperative endeavor agreement with the Sheriff's Office whereby the Levee District provides lunch to the trustees working for the Levee District. First, the Levee District is not the parish governing authority, so by its specific terms, La.R.S. 15:566
is inapplicable to the current situation. Secondly, Louisiana law specifically allows cooperative endeavor agreements among public entities to achieve goals that are for a public purpose.
The Louisiana Constitution provides that "[f]or a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private associations, or corporation, or individual." La.Const. art. 7 Sec. 14(C). The same constitutional provisions, however, prohibits the loan, pledge, or donation of public property "to or for any person, association, or corporation, public or private." La.Const. art. 7, Sec. 14(A).
These provisions had previously been interpreted as prohibiting a political subdivision from giving up something of value when it is under no legal obligation to do so. City of Port Allen v. Louisiana RiskManagement, et al., 439 So.2d 399 (La. 1983). In recent years, however, that interpretation was rejected by the Louisiana Supreme Court in the case of government investment related to the Cabela's development in Gonzales. See Board of Directors of the Industrial Development Board ofthe City of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales, 938 So.2d 11, 23, 2005-2298 (La. 9/6/06) (the "Cabela's" case). The Court shifted the focus from the public entity's obligations to an analysis of whether the alienation of the public asset is gratuitous. *Page 3 
In conducting the analysis, the Court looked at all of the circumstances of the proposal before it. The Court specifically reviewed the project documents, which contained clauses specifying that the participation by the public entity was not gratuitous because "both parties expect to receive something of value in return for the performance of their obligations." Industrial Development Board of Gonzales,938 So. 2d at 24. The Court also noted that the contract at issue included a clause acknowledging "that there is a reasonable expectation that the Project will result in economic development within the State which will exceed the value of the obligations of the State contained herein, thereby serving a public purpose." Id. The Court found that the documents involved established that the intent of the parties was not to enter into a gratuitous contract.
The court also looked at the potential benefits that would accrue to the public entity and the extent of the obligations of the private partner. The Court observed that both were "significant." The court ultimately concluded that the Cabela's agreement was a permissible arms-length transaction between two entities. The agreement was found not to be gratuitous because each party was obligated to give up something of value in exchange for certain benefits to be received under the terms of the agreement. Based on its findings, the Court held that the project did not violate Article 7, Section 14(A) of the Louisiana Constitution.
This office has interpreted the Cabela's decision as requiring a public entity seeking to enter into a cooperative endeavor agreement involving the transfer of public funds or property to establish the following elements in order to the expenditure or transfer of funds or property to comply with the Constitution:
 1. A public purpose for the expenditure or transfer must be present;
 2. The expenditure or transfer, taken as a while, must not appear to be gratuitous; and
 3. There must be evidence demonstrating that the public entity has a reasonable expectation of receiving a benefit or value at least equivalent to the amount expended or transferred.
Atty. Gen. Op. No. 08-0071.
A cooperative endeavor agreement between the Levee District and Sheriffs Office in which the Levee District would provide lunches to the trustees working for it appears acceptable under the Cabela's case and thus is not prohibited by the Constitution. The object of the arrangement serves public purposes — the maintenance and improvement of the levee system, as well as the interests in the effective use of inmate labor and the rehabilitation goals of the penal system. Certainly the arrangement is not gratuitous. Each entity involved gives and gets things of value as a result of the interaction you described. The Levee District expends funds to provide the lunches to the inmate work force, while the inmate *Page 4 
labor provided to the Levee District is certainly something of value inuring to the benefit of the District. The Sheriff certainly incurs costs associated with making these inmates available to participate in these projects and the provision of meals to these inmates is something of value inuring to the benefit of the Sheriff because to a certain extent it reduces the cost to the Sheriff of feeding the inmate participants.
We believe therefore that it would be proper for the Levee District and the Sheriff to enter into cooperative endeavor agreements in furtherance of their official duties and obligations under Article VII, Section 14(C) of the Louisiana Constitution and La.R.S. 33:1324.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 Attorney General
 BY: __________________________
 Lindsey K. Hunter
 Assistant Attorney General
 JDC/LKH/crt