Dear Marshal McCoy:
Your request for an Attorney General's Opinion has been forwarded to me for research and reply. Since you asked a number of questions and subquestions, this opinion will state all of your questions and then the answers to these questions will follow.
Your questions are:
 1) What powers does the Marshal have in relation to the City of Franklin Police Department, civil service police officers, and the city jail?
 2) How much should the City of Franklin and the Parish of St. Mary contribute toward the marshal's and Chief Deputy Marshal's salaries?
 3) What should the salary of the Marshal and the Chief Deputy marshal be when the population of Franklin and Third Ward is over 11,000?
 4) Who is responsible for making sure the Marshal and the City Court have a safe place to conduct business and the materials to carry out the works of the department?
 5) How many deputies can the Marshal hire and how should their salaries be apportioned between St. Mary Parish and the City of Franklin?
 6) Can a secretary be hired as a Deputy Marshal, with the City and Parish paying the salary?
7) What is a cooperative agreement?
 8) Must a cooperative agreement be approved by the City Council, the Mayor or both?
9) Should a cooperative agreement be in writing?
 10) Does the Marshal become a Notary authorized to deal with criminal matters on the day he takes office?
The Franklin City Marshal is created by LSA-R.S. 13:2488.1. The position of marshal is part of the city court of the town of Franklin, Louisiana, which includes a city judge, marshal and a clerk of court. The town of Franklin was incorporated in 1876 by special legislative act. Louisiana Act No. 89 of 1876 provides for the mayor and councilmen of the town of Franklin to "elect some suitable person to be assessor, one to be treasurer, and one to be constable of the town of Franklin . . . and to prescribe their duties, . . . and determine all matters relating to the said assessor, treasurer, constable, and secretary." (Emphasis added). Thus, the constable is an appointed postion, separate and apart from the position of marshal of the city court, which is an elected postion.
In response to your first question, the general powers and duties of the marshal of the city court are specifically set forth in LSA-R.S.13:1881, as follows:
 § 1881. General powers and duties of marshal; deputy marshals
 A. The marshal is the executive officer of the court; he shall execute the orders and mandates of the court and in the execution thereof, and in making arrests and preserving the peace, he has the same powers and authority of a sheriff.
 B. The marshal may appoint one or more deputy marshals having the same powers and authority as the marshal, but the marshal shall be responsible for their actions. The compensation of the deputy marshals shall be fixed and paid by the governing authorities of the city or parish, or both, where the court is located. The city marshal may use funds available for expenses of his office, including proceeds from costs assessed in criminal matters pursuant to R.S. 13:1899, to pay an amount in excess of the fixed salary or to pay the amount fixed or any portion thereof to deputy marshals or to employ additional deputies. However, nothing herein shall authorize the city marshal to fix or supplement his own salary. In no event shall the salary of any deputy exceed that of his city marshal.
In contrast, the powers of the constable are prescribed by the mayor and councilmen. Therefore, the marshal has no power over the constable, and the constable has no power over the marshal. They are two separate offices. Although we have no information with regard to the duties of the constable as prescribed by the mayor and councilmen, these duties are probably similar to those of the marshal with regard to the making of arrests and preserving the peace.
This office has previously addressed who is responsible for managing municipal jails. The conclusion reached in Attorney General Opinions 01-246 and 97-410 is that the municipality, the City of Franklin, is vested with the responsibility of the management and control of municipal property which extends to the city jail. In the absence of a provision designating who is to provide the administration, it is our opinion that the special legislative charter provides for the mayor and councilmen to designate by ordinance who is the keeper or warden of the city jail facility.
Your second question is answered by LSA-R.S. 13:2488.4. These salaries are to be apportioned between the City of Franklin and St. Mary Parish in a proportion to the population of the City of Franklin within Ward Three of St. Mary Parish and the population of the unincorporated portions of Ward Three of St. Mary Parish bear to the total population of Ward Three of St. Mary Parish. Originally, the proportions were fifty percent for each entity, but were changed in 1979 to sixty percent for Franklin and forty percent for St. Mary Parish.
The third question regarding how much the marshal is to be paid, is answered in LSA-R.S. 13:2488.4 which states the minimum annual salary is $4,440.00, payable monthly. The governing authorities of the City of Franklin, St. Mary Parish, or either of them, may pay such additional salary to the marshal as they may deem proper.
Also, you are entitled to a number of fees in association with civil matters. These fees are listed in LSA-R.S. 33:1704.1; those pertinent to the City of Franklin are as follows:
§ 1704.1. Fees and costs; particular city marshals
 A. Notwithstanding the provisions of R.S. 33:1704, the marshal of the city of Franklin, shall each be entitled to the following fees of office and no more in civil matters:
 (1) For making service and return of citation with or without petition on each defendant, seven dollars.
 (2) For making service and return of supplemental or amended petition with or without accompanying citations, seven dollars.
 (3) For making service and return of interrogatories and notice of cross interrogatories, six dollars.
 (4) For making service and return of garnishment under writ of fieri facias, nine dollars and fifty cents.
 (5) For making service and return of writ of attachment on each witness, six dollars.
 (6) For making service and return of writ of sequestration, eight dollars.
(7) For taking bond authorized by law, six dollars.
 (8) For making service and return of notice of judgment, six dollars and fifty cents.
 (9) For making service and return of citation and petition for appeal and order, seven dollars.
 (10) For return on writ of fieri facias, seven dollars and fifty cents.
 (11) For making service and return of citations requiring personal service, seven dollars, to wit: rule nisi, subpoena, subpoena duces tecum, judgment debtor.
 (12) For keeping property under seizure by any writ or process, fees to be fixed by the court after service of notice to the parties or their attorneys of record in the suit.
 (13) For collecting money pursuant to an execution of an order of seizure and sale or a writ, without either seizure or sale, six percent, with a minimum of ten dollars for each execution or order of seizure and sale.
 (14)(a) For serving each order of court not otherwise herein specially provided for, six dollars.
 (15)(a) For each mile or fraction thereof actually and necessarily traveled in going to and returning from the service of any process of court, sixteen cents.
 B. No constructive mileage shall be allowed. When service of different processes in the same case or processes of court in different cases are served on the same official tour of the constable, the actual mileage traveled shall be prorated.
 C. Notwithstanding any other provision of law to the contrary, but otherwise in accordance therewith, . . . the marshal of the city of Franklin, . . . shall each be entitled to a minimum fee of office of ten dollars for each service rendered in civil matters.
The salary of the Chief Deputy and other deputies is set forth by LSA-R.S. 13:1881(B), which states the compensation of deputy marshals shall be fixed and paid by the governing authorities of the city or parish, or both, where the court is located. Also, the city marshal may use funds available for expenses of his office, including proceeds from criminal matters, to pay an amount in excess of the fixed salary or to pay the amount fixed or any portion thereof to deputy marshals or to employ additional deputies. In no event is the marshal authorized to fix or supplement his own salary and no salary of any deputy shall exceed that of the city marshal.
The answer to the fourth question is found in LSA-R.S. 13:2488.6 which requires the expenses and operation and maintenance of the courtroom and offices to be apportioned equally between the governing authorities of the City of Franklin and the Parish of St. Mary in a proportion which the population of the City of Franklin within Ward Three of St. Mary Parish and the population of unincorporated portions of Ward Three of St. Mary Parish bear to the total population of Ward Three of St. Mary Parish. The governing authorities, or either of them, may pay such additional expenses as they may deem proper.
With regard to how many deputies the marshal may hire, LSA-R.S.13:1881(B) states that the marshal may appoint one or more deputy marshals having the same powers and authority as the marshal, but the marshal shall be responsible for their actions. The compensation of deputy marshals shall be fixed and paid by the governing authorities of the city or parish, or both, where the court is located.
Your sixth question asks if a secretary can be hired as a deputy marshal with the city and parish paying the salary? The answer to the question is "yes", you may appoint one or more deputy marshals, but the compensation shall be fixed and paid by the governing authorities of the city or parish, or both, where the court is located. This appointment is allowed by LSA-R.S. 13:1881(B) which is discussed above. However, note that if the deputy marshal is to make arrests, conduct searches and seizures, execute criminal warrants or is responsible for the prevention or detection of crime, the deputy would be classified as a "peace officer" as defined in LSA-R.S. 40:2402(1)(a). As a peace officer with the duties listed above, a course of study certified by the council on peace officer standards and training (POST) is required. On the other hand, if the deputy is not a peace officer, the training is not required and she could be assigned duties of a secretary or clerk.
Your seventh, eighth and ninth questions deal with cooperative agreements. Cooperative agreements are commonly referred to as intergovernmental agreements since they occur between two or more political subdivisions. An intergovernmental agreement is defined in Article VI, Section 10 of the Louisiana Constitution of 1974 as follows:
§ 10. Intergovernmental Cooperation
 Except as otherwise provided by law, a political subdivision may exercise and perform any authorized power and function, including financing, jointly or in cooperation with one or more political subdivisions, either within or without the state, or with the United States or its agencies.
This office has previously discussed cooperative agreements or intergovernmental agreements in Attorney General Opinion No. 91 — 313. The question asked in that opinion was whether the Avoyelles Sheriff properly loaned $4,000 to the Marksville City Court. The opinion discussed Article VI, Section 10, as well as Article VII, Section 14 of the Louisiana Constitution of 1974. Article VII, Section 14 governs the transfer of public funds between distinct political subdivisions of the state and requires a legal obligation of the loaning agency to the recipient. The opinion quotes the Louisiana Supreme Court in City ofPort Allen v. Louisiana Municipal Risk Management, Inc., et al.,439 So.2d 399 (La. 1983) as ". . . this section is violated whenever the state or political subdivision seeks to give up something of value when it is under no obligation to do so." The requirement of a legal obligation must rise from positive law or its equivalent. While Attorney General Opinion No. 91-313 discusses loans which are specifically prohibited by Article VII, Section 14, it should be noted that cooperative agreements with legal obligations are allowed by Article VI, Section 10. Accordingly, both constitutional provisions allow for cooperative agreements between political subdivisions, but require an existing legal obligation of the subdivisions to each other.
The special legislative charter provides for the following general power:
 First — To regulate and preserve the peace and good order of the town, and pass all by-laws and ordinances necessary for the purpose.
We believe this first general power given to the board of aldermen gives the board the authority to enter into contracts. Typically, a mayor acting alone is without power to execute a contract binding on a city absent an ordinance or resolution by the board of aldermen authorizing him to do so. However, once the contract is approved by the board, the mayor has the power to sign it on behalf of the municipality.
With regard to whether the agreement must be in writing, common sense dictates that it must be. Cooperative or intergovernmental agreements deal with public money, property and employees and a written instrument is required so that the agreement may be reviewed by anyone who requests to do so and also for auditing purposes.
Your last question asks if you become a notary when you take office as marshal. According to LSA-R.S. 33:1464, sheriffs may appoint one deputy per shift as an ex officio notary. This office determined in Attorney General Opinion No. 94-357 that a marshal may also appoint an ex officio notary since a marshal enjoys the "same powers and authority of a sheriff in making arrests and preserving the peace." For this reason, a marshal may designate an officer of his department to perform the official functions of the marshal's office and you are certainly given the authority to designate yourself as the ex officio notary for your office.
We trust your questions have been sufficiently answered. However, if you should need anything further, do not hesitate to contact this office.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: ______________________________ Frances J. Pitman Assistant Attorney General
CCF, Jr.:FJP:sc