Dear Mr. Bryant,
Your request for an Attorney General's opinion has been forwarded to me for research and reply. According to your request, two years ago, you were elected to serve on the Grambling City Council. You claim that there are several benefits available to council members that you were never made aware of, including medical, dental and vision insurance, and a death benefit of twenty thousand dollars. Your request states that the City of Grambling pays 95% of the policy premiums for council members. You ask whether you may be paid the portion of the premiums that would have been paid by the City of Grambling to the insurance company had you been enrolled in the insurance programs over the past two years. La.R.S. 33:5151 permits municipalities and political subdivisions to pay all or a portion of the insurance premiums for its employees and elected officials. It provides:
 (A) Any municipality or political subdivision of the state may make contracts of insurance with any insurance company legally authorized to do business in this state insuring their employees and officials under policies of group insurance covering hospitalization, and retirement, for such employees and officials, and may agree to match the payments of the employees and officials for the premiums or charges for any such contracts payable out of the funds of such municipality or political subdivision, respectively.
 (B) Nothing in this Section or in R.S. 42:851
shall be construed to limit the contribution of a local governmental *Page 2 
subdivision toward the payment of premiums for accident and health protection for its employees or their dependents, or both.
In Atty. Gen. Op. No. 91-219, this office opined that although a political subdivision may pay the cost of insurance premiums for its employees, "the agreement or contract of insurance must be in place before the payments are authorized and past payments may not be reimbursed." The opinion stated, "[w]ith regard to reimbursement of payments prior to the existence of a contract or agreement, we find that this practice would be a donation of public funds and therefore barred by La.Const. art. 7 Sec. 14. Unless and until there is an agreement or contract to pay these premiums on behalf of the council members there is no obligation on the part of the political subdivision to make the payment, therefore reimbursement would be violative of the constitution." This office reached the same conclusion in Atty. Gen. Op. Nos. 92-547, 94-417, 95-152, 99-358A and 02-0094.
We find no reason to depart from those previous opinions now. Although these opinions were written before City of Port Allen v. Louisiana Mun.Risk Mgmt. Agency, Inc., 439 So.2d 399 (La. 1983) was replaced byBoard of Directors of the Industrial Development Board of the City ofGonzales, Louisiana, Inc. v. All Taxpayers, Property Owners, Citizens ofthe City of Gonzales, et al., 2005-2298 (La. 9/6/06), 938 So.2d 11 (the"Cabela's" case), it is the opinion of this office that the outcome remains the same. In Cabela's, the Louisiana Supreme Court held that La.Const. art. VII, Sec. 14(A) "is violated when public funds or property are gratuitously alienated." Cabela's, 938 So.2d at 20.
In light of the Cabela's case, it is the opinion of this office that in order for an expenditure or transfer of public funds to be permissible under Art. VII, Sec. 14(A), the public entity must have the legal authority to make the expenditure and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. TheCabela's standard places a strong emphasis on the reciprocal obligations between the parties to ensure that there is not a gratuitous donation of public funds.
By enacting La.R.S. 33:5151, we can conclude that the legislature determined that a public purpose exists to allow municipalities or political subdivisions to pay all or a portion of the insurance premiums for its employees and elected officials. We do not interpret La.R.S.33:5151 to allow a municipality to pay the cost of the insurance premiums to the employee (instead of to the insurance company) in the absence of an insurance contract. To do so would be a purely gratuitous expenditure of public funds. The municipality would not receive anything in *Page 3 
exchange for the public funds spent to cover insurance premiums for a policy that could have been in place over the past two years (but was not) because an insurance company cannot provide coverage for a period of time that has already taken place.
Accordingly, it continues to be the opinion of this office that although a political subdivision may pay the insurance premiums of public employees per La.R.S. 33:5151, the insurance contract must be in existence before the payments are authorized, and past payments may not be reimbursed as this would violate La.Const. art. VII, Sec. 14(A).
Finally, although we do not know the procedure by which the City of Grambling informs its employees and elected officials of benefits available to them, it would be good practice for the City to establish a procedure that would ensure new employees are made aware of all benefits available to them as soon after their employment begins as possible.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL Attorney General
 BY: __________________________ Lindsey K. Hunter Assistant Attorney General
 JDC/LKH/crt