Dear Mr. Kramer:
You have requested an opinion of the Attorney General on behalf of the Board of Directors for Franklin Parish Hospital Service District No. 1 (District No. 1) regarding whether District No. 1 may negotiate insurance rates and coverage as a collective group with community employers in order to provide higher quality benefits to its employees at lower cost. In your request, you provide three hypothetical scenarios regarding forming a collective group, which include:
I. An already existing entity, such as the local Chamber of Commerce, would enter into a contractual relationship with its members to approach, negotiate with, and engage insurers on behalf of those members for the purpose of obtaining the best rates possible.
II. A cooperative endeavor would be formed, consisting of all community employers wishing to take advantage of possible lower insurance rates, which would then conduct the negotiations for a group rate for the employees of all parties to the cooperative endeavor.
III. An informal meeting of representatives from each employer would compare insurance rates proposed by individual carriers and use the exchange of information to maximize their own negotiating position.
Your request raised the following questions that arise from the above hypotheticals:
A. Are such arrangements in violation of state or federal law?
B. Is the participation of a public entity, such as a hospital service district, permitted in the above or similar arrangements? *Page 2 
C. Does the indirect benefit received by a local hospital service district (higher percentage of insured in the population) limit the degree of participation the district may have in the negotiation of benefit rates or other items affecting the entities charged with that function?
Initially, we note that our office does not give opinions on federal law. All other questions you have raised will be addressed sequentially in terms of the proposed hypotheticals.
I. An already existing entity, such as the local Chamber ofCommerce, would enter into a contractual relationship with its membersto approach, negotiate with, and engage insurers on behalf of thosemembers for the purpose of obtaining the best rates possible.
Louisiana Constitution Article VII, § 14 prohibits the donation of public funds by political subdivisions. Hospital service districts are political subdivisions of the state under La.R.S. 46:1064. La.Const. Art. VII, § 14(A) provides in pertinent part:
(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . .
This office has consistently opined that the payment of dues for membership in civic organizations, such as the Chamber of Commerce, from public funds violates La.Const. Art. VII, § 14(A). See Atty. Gen. Op. No. 96-195, 95-439, 89-602, and 1946-48, p. 462. Thus, it is the opinion of this office that District No. 1 is not authorized to purchase a membership into a civic organization, such as the Chamber of Commerce, in order for the civic organization to approach, negotiate with, and engage insurers on behalf of its members. Payment for such a membership would constitute a prohibited donation of public funds pursuant to La.Const. Art. VII, § 14(A).
II. A cooperative endeavor would be formed, consisting of allcommunity employers wishing to take advantage of possible lowerinsurance rates, which would then conduct the negotiations for a grouprate for the employees of all parties to the cooperative endeavor.
In addressing this hypothetical, we first note that La. R.S46:1068.1 provides as follows: *Page 3 
R.S. 46:1068.1 Employee insurance plans; payment by hospital service districts
A. Notwithstanding the provisions of R.S. 33:5151 and R.S. 42:851, a hospital service district may pay, on behalf of its directors, officers, and employees, the full cost of coverage, whether through a self-funded plan, a contract with an insurer, or otherwise, for life, health, and accident insurance.
As can be seen from the above, District No. 1 has the authority to pay the full costs, or any portion thereof, of coverage for life, health, and accident insurance for its employees.
Next, we call your attention to Article VII, § 14(C) of the La.Constitution, which authorizes a political subdivision to engage in cooperative endeavors for a public purpose with any public or private association, corporation, or individual. La.Const. Art. VII § 14(C) provides as follows:
(C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
Paragraph (A) of La.Const. Art. VII, § 14 generally prohibits the loan, pledge, or donation of public funds. Paragraph (C) merely supplements the prohibition against donations contained in VII, § 14(A). It does not create an exemption or exception from the general constitutional norm. La. Atty. Gen. Op. Nos. 08-0086, 08-0071, and 07-0205. Therefore, the cooperative endeavor must still be legally authorized and meet the general standards for the non-gratuitous alienation of public funds established in La.Const. Art. VII, § 14(A).
In Board of Directors of the Industrial Development Board of theCity of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales, et al., 2005-2298 (La. 9/6/06),938 So.2d 11 (the "Cabela's" case), the Louisiana Supreme Court abandoned its prior analysis in City of Port Allen. v. Louisiana Mun.Risk Mgmt. Agency, Inc., 439 So.2d 399 (La. 1983), and articulated a new standard of review governing La.Const. art. VII, § 14(A), stating that La.Const. art. VII, § 14(A) "is violated when public funds or property are gratuitously alienated." Cabela's, 938 So.2d at 20.
In light of the Cabela's case, it is the opinion of this office that in order for an expenditure or transfer of public funds to be permissible under Art. VII, Sec. 14(A), the public entity must have the legal authority to make the expenditure and must show (i) a public purpose for the expenditure or transfer that comports with *Page 4 
the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. The Cabela's standard places a strong emphasis on the reciprocal obligations between the parties to ensure that there is not a gratuitous donation of public funds.
Under the scenario presented, District No. 1 is contemplating entering into a cooperative endeavor with local private employers in hopes of receiving lower insurance rates. The insurance rates would be for the entire cooperative endeavor, and the cooperative would be responsible for the premiums on group insurance. Therefore, public funds would be commingling with private funds and would be used to benefit both private and public persons.
In order to determine if District No. 1 has the legal authority to enter into a cooperative endeavor in which public funds would be used to benefit both private and public persons, we turn to La.R.S. 46:1052, which provides the objects and purposes of a hospital service district. La.R.S. 46:1052 provides as follows:
The objects and purposes of the hospital service districts and the governing bodies created under the provisions of this chapter shall be:
(1) To own and operate hospitals for the care of persons suffering from illnesses or disabilities which require that patients receive hospital care.
(2) To administer other activities related to rendering care to the sick and injured or in the promotion of health which may be justified by the facilities, personnel, funds and other requirements available.
(3) To promote and conduct scientific research and training related to the care of the sick and injured insofar as such research and training can be conducted in connection with the hospital.
(4) To participate so far as circumstances may warrant in any activity designed and conducted to promote the general health of the community.
(5) To cooperate with other public and private institutions and agencies engaged in providing hospital and other health services to residents of the district. *Page 5 
Based on the foregoing, District No. 1 does not have the legal authority to enter into a cooperative endeavor with local private employers. La.R.S. 43:1052 does not authorize District No. 1 to legally use public funds to provide insurance to private individuals. Furthermore, while La.R.S. 46:1068.1 authorizes District No. 1 to use public funds to pay insurance benefits on behalf of its employees, it does not authorize District No. 1 to use public funds to provide insurance to private individuals. Applying the Cabela's test to the expenditure in question, District No. 1 does not have the requisite legal authority to make the disbursement. It is the opinion of this office that the expenditure of funds in connection with this cooperative endeavor does not qualify as a public purpose for which District No. 1 has authority to pursue.
III. An informal meeting of representatives from each employerwould compare insurance rates proposed by individual carriers and usethe exchange of information to maximize their own negotiatingposition.
We do not find any provision under Louisiana law that prevents or prohibits an informal meeting of representatives from community employers to exchange and compare insurance rates in order to maximize their own negotiating positions. Additionally, we do not find any provision under Louisiana law that prevents or prohibits a hospital service district from participating in such a meeting among community employers. This office routinely addresses questions pertaining to state law. Your questions concerning federal law should be forwarded to the United States Department of Justice Antitrust Division, 950 Pennsylvania Avenue NW, Washington, DC 20530.
We hope that this sufficiently answers your inquiry. However, if we may be of further assistance, please do not hesitate to contact our office.
Yours very truly,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
By:__________________________ ERIN C.DAY Assistant Attorney General
JDC/ECD/sfj